967 So.2d 379 (2007)
Robert LUSCOMB and Mary Luscomb, Appellants/Cross-Appellees,
v.
LIBERTY MUTUAL INSURANCE COMPANY; BJ's Wholesale Club, Inc., a foreign corporation; and BJCR, Ltd., a foreign limited partnership, Appellees/Cross-Appellant.
No. 3D07-15.
District Court of Appeal of Florida, Third District.
October 17, 2007.
Vaka, Larson & Johnson and George A. Vaka and Nancy A. Lauten, Tampa, for appellants/cross-appellees.
Law Office of Glenn G. Gomer and Melisa L. Bodnar, Tampa, for appellee/cross-appellant Liberty Mutual Insurance Company.
Before WELLS and CORTIÑAS, JJ., and FLETCHER, Senior Judge.
PER CURIAM.
Robert Luscomb and Mary Luscomb (collectively "Luscomb") appeal a final judgment imposing a workers' compensation lien on proceeds of a personal injury claim against a third party. Liberty Mutual Insurance Company cross appeals the trial court's final judgment and interlocutory orders relating to Luscomb's attorney's fees and costs. Liberty Mutual asserts that Luscomb's attorneys were required to disgorge $50,662 in fees and costs for application to Liberty Mutual's lien.
*380 This case turns on the application of section 440.39(3)(a), Florida Statutes, as in force on the date of Robert Luscomb's injury,[1] to the claims and proceeds in question. We reverse and remand for the additional factual determination required by the statute on the facts of this case. We provide direction to the trial court on the use of that additional fact to compute Liberty Mutual's lien and entitlement to all or some portion of the net settlement proceeds of $81,748.
We review the application of the workers' compensation lien statute de novo and any trial court findings of fact under the substantial competent evidence standard of review.
I. Pertinent Facts
Robert Luscomb worked for Raven Transport Company. Raven Transport's workers' compensation coverage was provided by Liberty Mutual. On September 8, 1999, Luscomb's right foot and ankle were badly injured as he delivered goods to BJ's Wholesale Club in Miami. Ultimately Luscomb's right foot was amputated, and he incurred hundreds of thousands of dollars in medical expenses. His disability also resulted in the loss of his job and income as a truck driver for Raven Transport.
Liberty Mutual paid workers' compensation medical and disability benefits as provided by law. Luscomb did not file third-party tort claims during the year following his injury, and neither Raven Transport nor Liberty Mutual brought suit during the second year following the injury. Under section 440.39(4), Luscomb's rights of action against third-party tortfeasors then reverted to him, but subject to Liberty Mutual's subrogation and lien rights as provided by section 440.39(2) and (3).
In July 2003, Luscomb filed tort claims against BJ's Wholesale Club, Inc., and BJCR, Ltd.,[2] based on the accident and his damages. Liberty Mutual promptly filed a notice of lien in the lawsuit for compensation and medical benefits paid to Luscomb, then alleged to be $637,064.07.
The claims against BJ's settled after mediation in 2005 for $215,000. At that point, Liberty Mutual's disbursements and lien exceeded $1 million. When Luscomb's attorney's fees of $86,000 (a 40% contingent fee) and $47,252 in costs were subtracted, the net settlement proceeds otherwise payable to Luscomb were $81,748.
Liberty Mutual claims that the statutory lien computation includes a portion of Luscomb's attorney's fees and costs, such that the correct lien amount is actually greater than the net amount otherwise payable to Luscomb. Liberty Mutual argues that Luscomb's attorneys must disgorge $50,662 in attorney's fees and costs as Liberty Mutual's statutory "pro rata share" of the total fees and costs so that those funds may be applied to Liberty Mutual's lien.
The trial court stopped short of requiring Luscomb's attorneys to repay that amount to the trust account balance held for Luscomb, $81,748. The final judgment imposed a lien of $132,410, but limited Luscomb's obligation to his net proceeds of $81,748.
Luscomb argues that the $215,000 settlement amount is not the "full value of damages sustained" for purposes of the lien statute. His experts placed the full value of the third-party tort claim at $5 million to $6 million, taking into account *381 his life expectancy, medical expenses, and lost earning capacity. Luscomb maintains that the trial judge was required to make a determination of the full value of the tort claim against BJ'swithout reduction for any comparative negligence by Luscomb for use as the denominator in calculating Liberty Mutual's lien and entitlement to any of the net proceeds. That percentage would be applied to Liberty Mutual's total benefits payments of $1,120,408 to produce Liberty Mutual's lien amount. If Liberty Mutual's resulting lien amount is below $81,748, Luscomb will recover the balance of those proceeds personally (free of the lien).
II. Section 440.39(3)(a)
The lien statute has a straightforward and appropriate objectivethe prevention of double recoveries by injured employees who have recovered statutory benefits under the workers' compensation law but also have claims against responsible parties other than the employer. Jones v. Martin Elecs., Inc., 932 So.2d 1100, 1108 (Fla.2006). The statute allows the employer or insurer to be subrogated to the proceeds of such third-party tort recoveries to the extent of the amounts paid or to be paid by the employer or insurer.
The statutory mechanism gives the employee one year from the date the cause of action accrued to commence the third-party lawsuit. The employer or insurer paying workers' compensation benefits to the employee then has a second year within which to commence the lawsuit. At the end of the second year, the rights of action revert to the employee, but are (as before) subject to the employer or insurer's subrogation and lien rights.
This very logical process, and the statute describing it, becomes more complicated because of the broad array of circumstances that may occur with the third-party claims and recoveries. They may be brought by the employee, employer, or insurer (based on the one-year windows described above), and the attorneys prosecuting the claims may therefore be compensated by the employee, employer, or insurer. The employee may have settled all the workers' compensation medical and indemnity claims for a lump sum (as here), or the benefits may continue to be payable into the future. The third-party recoveries may exceed the total benefits paid and to be paid by the employer or its insurer, or they may be less than that total (as here). There may be multiple third-party claims and recoveries, and therefore multiple computations of the lien, and the recoveries may occur at different times. A particular recovery may be less than the "full value" of the third-party claim for a variety of reasons: other third-party tortfeasors may be responsible for some of the damages, the employee may have been comparatively negligent, or the plaintiff and counsel for the plaintiff may discount the value of the claim in order to avoid the risk and delay inherent in any lawsuit.
Drafting a single statutory provision to consider that array of permutations is daunting, to say the least. The application of section 440.39(3)(a) is equally daunting. The pertinent sentences, which are only a portion of subparagraph (a), are:
Upon suit being filed, the employer or the insurance carrier, as the case may be, may file in the suit a notice of payment of compensation and medical benefits to the employee or his or her dependents, which notice shall constitute a lien upon any judgment or settlement recovered to the extent that the court may determine to be their pro rata share for compensation and medical benefits paid or to be paid under the provisions of this law, less their pro rata share of all court costs expended by the plaintiff in the *382 prosecution of the suit including reasonable attorney's fees for the plaintiff's attorney. In determining the employer's or carrier's pro rata share of those costs and attorney's fees, the employer or carrier shall have deducted from its recovery a percentage amount equal to the percentage of the judgment or settlement which is for costs and attorney's fees. Subject to this deduction, the employer or carrier shall recover from the judgment or settlement, after costs and attorney's fees incurred by the employee or dependent in that suit have been deducted, 100 percent of what it has paid and future benefits to be paid, except, if the employee or dependent can demonstrate to the court that he or she did not recover the full value of damages sustained, the employer or carrier shall recover from the judgment or settlement, after costs and attorney's fees incurred by the employee or dependent in that suit have been deducted, a percentage of what it has paid and future benefits to be paid equal to the percentage that the employee's net recovery is of the full value of the employee's damages. . . .
§ 440.39(a), Fla. Stat.
In applying these terms to the relative rights of Luscomb and Liberty Mutual following the $215,000 settlement, the trial court did not have to confront two of the variables that can make the computations more complicated. First, the workers' compensation claims had been fully settled, and this meant that the maximum amount of the lien was a liquidated sum. Second, there was no evidence that other non-settling third-party tortfeasors might provide further sources of recovery attributable to the accident.
III. Analysis
Section 440.39(3)(a) has produced a continuing line of cases interpreting its daunting directives. Those cases illuminate and control the application of the statute here.
The first issue is whether Liberty Mutual's lien may attach to the settlement funds beyond the net amount otherwise payable to Luscomb. Specifically, the trial court found that Liberty Mutual's lien exceeded that net amount of proceeds, and Liberty Mutual argues that Luscomb's attorneys must disgorge that excess by refunding a portion of their fees incurred in producing the settlement.
That question was answered in City of Hollywood v. Lombardi, 770 So.2d 1196, 1202 (Fla.2000), and Aetna Insurance Co. v. Norman, 468 So.2d 226, 228 (Fla.1985), each of which held that the workers' compensation lien recovery was capped at the claimant's net recovery. The final judgment and orders below are thus incorrect to the extent that they impose any lien over the settlement funds or right of recovery in favor of Liberty Mutual to proceeds of the settlement in excess of the $81,748 net recovery. Section 440.39(3)(a) does not penalize an injured worker's counselwho, after all, produced a subrogation recovery for the insurerfor successfully prosecuting the worker's claim against a third-party tortfeasor.
The second issue is whether Liberty Mutual's lien over the net proceeds must be reduced to a percentage of the benefits paid by Liberty Mutual because of evidence in the trial court that, in the words of section 440.39(3)(a), Luscomb "did not recover the full value of damages sustained." The trial court found that Luscomb "failed to establish any conditions showing comparative negligence at the time of the injury which would occasion a diminution in the amount to be reimbursed to Liberty Mutual Insurance *383 Company," but that is not the determination required by the statute.
The threshold question for the trial court was whether Luscomb demonstrated that he did not recover the full value of his damages sustained in the accident. Clearly he made such a showing, and Liberty Mutual (having paid out over $1.1 million of such damages) cannot argue otherwise. Determining a percentage of comparative negligence is no longer required because, as the Florida Supreme Court has held, that question "introduces an artificial issue which need not be litigated" in a situation such as this, undermines the common interest of the worker and compensation carrier in obtaining full value, and may give one or the other of the two "an undeserved windfall." Manfredo v. Employer's Cas. Ins. Co., 560 So.2d 1162, 1164-65 (Fla. 1990) (quoting Nikula v. Michigan Mut. Ins., 531 So.2d 330, 331-32 (Fla.1988)). Therefore, the controlling factor for evaluating the settlement allocation is "the ratio of net recovery to full value of damages." Manfredo, 560 So.2d at 1165 (quoting Nikula, 531 So.2d at 332 n.*).
Liberty Mutual maintains that the "full value" determination is not required here because the trial court found that Luscomb "failed to establish any conditions showing comparative negligence at the time of the injury. . . ." However, the record discloses that the defendants in the tort lawsuit raised comparative negligence (based on Luscomb's decision to walk in the muddy water in the rain-soaked loading dock), and Luscomb's expert evaluated both the full value of the damages and the likelihood of a reduced recovery as a result of that comparative negligence. The record does not disclose other reasons for Luscomb's acceptance of $215,000 in gross settlement funds in a case in which his damages had already exceeded $1 million.
Because the trial court did not determine "the full value of damages sustained" by Luscomb, we reverse and remand with directions to do so. The $81,748 in net settlement proceeds will then be divided by the "full value" figure to produce a percentage. That percentage will be applied to Liberty Mutual's total benefits paid, $1,120,408, to determine the insurer's lien amount. For example, if the trial court determines upon remand that the full value of the damages sustained by Luscomb was $5 million, the percentage would be 1.635% and the lien amount would be $18,318.
If Liberty Mutual's lien as computed after remand exceeds $81,748, it will recover all of the net settlement proceeds. If the lien is less than that amount, Liberty Mutual will be paid its lien from the proceeds, and the remaining balance will be paid to Luscomb.
IV. Conclusion
Liberty Mutual's lien on the proceeds of the settlement of Luscomb's third-party claim against BJ's as provided by section 440.39(3)(a) will not exceed the net proceeds otherwise payable to Luscomb. Those attorneys are not required to pay over part of their agreed fees or disbursements toward the satisfaction of Liberty Mutual's lien.
We reverse the judgment and orders below and remand this case to the trial court for a determination of the full value of Luscomb's damages based on the evidence presented by the parties.[3] The trial court should then divide the amount of $81,748 by that full value. The resulting *384 percentage is to then be applied to compute Liberty Mutual's lien and to pay those proceeds as specified above.
Reversed and remanded with directions.
NOTES
[1] September 8, 1999.
[2] The two BJ's defendants were the entity operating the retail store and the entity owning the store property.
[3] Both sides litigated this issue at the hearing on equitable distribution, so it would seem that additional evidence would not be required. We leave this judgment, however, to the discretion of the trial court.