991 So.2d 949 (2008)
Ralph J. CHACKAL, and his wife, Judy S. Chackal, Appellants,
v.
Kenneth STAPLES, his wife, Judith Staples; Albert Karnbach, his wife, Kathryn Karnbach; Jacqueline M. Eshelman; Stephen Shulman, his wife, Kim Shulman; Russell Barron; Lila Cobb; Christopher Seay; Lorilla Nolan; Robert D. Barker; Mary J. Nowak; Ann Marie Ferris; Lillian M. Isakov, as Trustee of the Isakov Family Living Trust; David Deaver, his wife, Linda Deaver; Stuart Hecht, his wife, Marjorie Hecht; and The County of Palm Beach, a political subdivision of the state of Florida, by the Board of County Commissioners, Appellees.
No. 4D07-2097.
District Court of Appeal of Florida, Fourth District.
September 10, 2008.
Order Granting Clarification and Remand October 22, 2008.
*951 Temple Fett Kearns and Alfred A. Lasorte, Jr., of Shutts & Bowen LLP, West Palm Beach, for appellants.
Andrew Pelino, Assistant County Attorney, West Palm Beach, for appellee The County of Palm Beach.
STEVENSON, J.
The Chackals timely appeal the trial court's ruling that a portion of a roadway that borders their property is owned by Palm Beach County pursuant to section 95.361, Florida Statutes (2001). Having carefully considered all of the arguments raised on appeal, we hold that the County has satisfied its statutory burden in all respects as to the majority of the disputed strip, except for the grassy area west of the guardrail. Moreover, we reverse the trial court's holding that the grassy portion is an appurtenance to the paved portion of the road. Thus, we affirm in part and reverse in part.

Procedural Background
Upland residents of the waterfront Carleton neighborhood originally filed this action against waterfront residents, the Chackals and the Hechts, and the County to enforce their deeded easement rights of access to the Intracoastal Waterway. The Chackals and the Hechts counterclaimed against the plaintiffs and cross-claimed against the County to quiet title based upon their warranty deeds to the disputed property. During these proceedings, the County and the plaintiffs adopted the shared position that the County owns the disputed portion of the road. At the trial, the County presented three legal theories of ownership of the property: common law dedication, transfer by quitclaim deed, and statutory presumed dedication. After a two-day bench trial, the trial court entered final judgment in favor of the County, rejecting its two alternate theories and holding that it had acquired title to the land at issue by statutory presumed dedication pursuant to section 95.361(1), Florida Statutes (2001), as follows:
By operation of Florida Statutes Section 95.361, Palm Beach County has obtained full rights, title, and ownership to the entire Disputed Strip as the evidence is *952 undisputed that the County has constructed, maintained and repaired this roadway continuously and uninterruptedly for more than four (4) years. The Suzanne Circle Street Improvement Project (Exhibit 4D in evidence) included the utilization of the entire Disputed Strip for the creation and maintenance of a roadway and appurtenances thereto.
This court has before it the Chackals' appeal of the final judgment, in which they maintain that the trial court misapplied the presumed dedication statute. The County did not appeal the trial court's rejection of its alternate legal theories.

Factual Background
In 1957, Dr. Ernest Carleton developed what is now called the Carleton subdivision in North Palm Beach, east of the Intracoastal Waterway. The subdivision is comprised of multiple lots around Suzanne Circle, a road that was originally constructed out of shell rock. South Suzanne runs east-west along the bottom of the circle. At the west end of South Suzanne, the original shell rock road sloped downward to the Intracoastal Waterway and it was historically used as a boat ramp by the Carleton residents. The residents also used the beachfront at the westernmost edge of South Suzanne for fishing and other recreation.
The portion of South Suzanne located between lot 10 (Hecht) and lot 11 (Chackal), described in this case as "the disputed strip," measures approximately 151' long by 34' wide and extends west from the southwest corner of Suzanne Circle to the Intracoastal. In each of the original Carleton deeds except for lot 11, a waterfront lot, Dr. Carleton granted an easement that provided a right-of-way over the disputed strip to access the Intracoastal Waterway. In its written order, the trial court acknowledged and defined the residents' deeded easement rights:
The Plaintiffs, and other upland owners, have private easement rights for pedestrian access for ingress and egress, but only to go across the Disputed Strip to allow them to walk across the Disputed Strip and access the Intracoastal Waterway right of way. These private rights do not include the right to dump concrete, trash, or anything else.
On appeal, the Chackals do not dispute the trial court's findings concerning the residents' easement rights and those findings remain undisturbed by the holding reached by this court.
In 1972, all property owners in the Carleton subdivision voluntarily executed quitclaim deeds to the County for their portions of Suzanne Circle as part of the County's Courtesy Maintenance program. Due to an apparent oversight by Dr. Carleton, title to the disputed strip was never included in the original deeds to lots 10 and 11. Consequently, when the predecessor owners of lots 10 and 11 attempted to convey their interests in the disputed strip, title did not pass to the County because it was not theirs to convey. Unaware that the owners of lots 10 and 11 failed to effectively convey title to the disputed strip, the County removed the property from the tax rolls (as if it had been conveyed to the County), along with the rest of Suzanne Circle, in 1972.
In 1984, the County undertook "Suzanne Circle Street Improvements," project number 83206. The County paved all of Suzanne Circle and updated the drainage system. In the disputed strip portion of South Suzanne Circle, the County raised and leveled the roadbed; created an underground trench; constructed a three-foot cement outflow pipe beneath the road; paved 137' by 34' of the road's surface; installed a 25' guardrail where the pavement ends (to prevent vehicles from driving *953 into the waterway); and planted sod on the approximately 15' by 34' of land lying to the west of the guardrail. Additionally, at the end wall of the road, which was created when the County elevated the roadbed, the County installed bags of "riprap" or sand cement around the outflow pipe for reinforcement.
Following the 1984 improvement project, although South Suzanne Circle no longer sloped downward to the waterway, the upland Carleton residents continued to utilize the disputed strip to access the Intracoastal for recreation purposes. Thereafter, the Chackals purchased lot 11 in 1989, and the Hechts purchased lot 10 in 1992. As noted, both lots border the disputed strip and the Intracoastal Waterway, and over time, bitter quarrels ensued between the Chackals, the Hechts, and various upland residents who traversed the disputed strip.
In 2001, after conducting a title search, the Chackals discovered that the disputed strip was never conveyed to the County and that, in fact, Dr. Carleton had retained fee simple ownership thereto. In an attempt to obtain dominion over the property, the Chackals and the Hechts purchased special warranty deeds to the disputed strip from Dr. Carleton's widow. In 2003, the Hechts, hired a contractor to remove the pavement and to plant sod where the County had previously installed pavement.
Following completion of the 1984 road improvement project, the County continued to conduct maintenance to the disputed strip, although County correspondence reveals that it wavered in its formal position as to whether or not the disputed strip was County property. In 1993, 2001, and 2003, Mrs. Hecht called the County to request maintenance to the end wall of South Suzanne Circle. Darryl Dawson, a crew chief with Palm Beach County Road and Bridge, North District, District 1, which encompasses the property at issue, testified that, in 2001, the County conducted work on the outflow pipe under Suzanne Circle to fix an erosion problem. In 2003, the County removed the guardrail to get a "spider" machine down to the end wall area to add "rubble rock" around the outflow pipe to secure erosion problems. At the 2003 project, the County replaced the sod in the disputed strip area. Dawson testified that the outflow pipe is part of the infrastructure of the road and it extends lengthwise all the way to the Intracoastal Waterway. Dawson further testified that the County has cost sheets dating back to 1997 that relate to maintenance of Suzanne Circle. In 1997 and 2001, the County did "patching" and added fill dirt to unspecified portions of Suzanne Circle.
According to the undisputed testimony, over that same period, the Chackals and the Hechts jointly maintained the grassy portion of the disputed strip located west of the guardrail. On at least one occasion, the County's code enforcement office instructed the Hechts that it was their responsibility to maintain that area.

Application of the Presumed Dedication Statute
On appeal, this court reviews a trial court's application of a statute de novo and any of the trial court's findings of fact under the competent substantial evidence standard of review. Luscomb v. Liberty Mut. Ins. Co., 967 So.2d 379, 380 (Fla. 3d DCA 2007). "`When a cause is tried without a jury, the trial judge's findings of fact are clothed with a presumption of correctness on appeal, and these findings will not be disturbed unless the appellant can demonstrate that they are clearly erroneous.'" Taylor v. Richards, 971 So.2d 127, 129 (Fla. 4th DCA) (quoting Universal Beverages Holdings, Inc. v. Merkin, 902 So.2d 288, 290 (Fla. 3d DCA 2005)), *954 review denied, 973 So.2d 1123 (Fla.2007). The County bears the burden of proving dedication. Trepanier v. County of Volusia, 965 So.2d 276, 285 (Fla. 5th DCA 2007).
In 2001, when this lawsuit was filed, section 95.361, Florida Statutes, applied only where a road was "constructed" by a governmental entity, as follows:
95.361. Roads presumed to be dedicated
(1) When a road, constructed by a county, a municipality, or the Department of Transportation, has been maintained or repaired continuously and uninterruptedly for 4 years by the county, municipality, or the Department of Transportation, jointly or severally, the road shall be deemed to be dedicated to the public to the extent in width that has been actually maintained for the prescribed period, whether or not the road has been formally established as a public highway. The dedication shall vest all right, title, easement, and appurtenances in and to the road in:
(a) The county, if it is a county road;. . .[1]
The appellants argue that the County failed to meet its burden under section 95.361, Florida Statutes (2001), because the County did not "construct" the portion of the road at issue, as it was already a pre-existing shell rock road. We disagree. In Pasco County v. Johnson, 67 So.2d 639, 642 (Fla.1953), the Florida Supreme Court, applying a statutory predecessor to section 95.361(1), broadly defined the term, "constructed." In Johnson, the supreme court held that Pasco County had "constructed" a road where the road had previously been laid out on private property by the owners of that property, but the county cleaned up "brush, stumps, trees and fill[ed] up the holes and ruts of such road so that the same [could] be usable." Id. Although Pasco County had not paved the road, the court noted that "[i]n order for a new road to be constructed it is not necessary that the surface be covered by concrete, asphalt or any other such materials." Id.
In the present case, we hold that the County's extensive structural repairs and improvements, including paving the road, constituted "construction" under the former statute, even though a shell rock road was already in existence. Furthermore, the trial court's finding that the County "constructed" the road was amply supported by competent substantial evidence in the record. As described supra, the County raised and leveled the roadbed, *955 paved 137' of the 151' disputed strip, installed a guardrail and planted sod on the remaining portion, upgraded the drainage system by constructing a trench and an outflow pipe beneath the surface, and installed heavy rocks and cement along the end wall for essential support.
The appellants further maintain that the County failed to meet its burden of proving that the County maintained or repaired the road continuously and uninterruptedly for four years. § 95.361(1), Fla. Stat. (2001). "The test is not whether the maintenance is proper, or frequent, or thorough, or open and obvious. The test is whether the maintenance was appropriate to the circumstances and, if so, the statutory test is met." Div. of Admin., State Dep't of Transp. v. Ideal Holding Co., 427 So.2d 392, 393 (Fla. 4th DCA 1983). In Balbier v. City of Deerfield Beach, 408 So.2d 764, 765 (Fla. 4th DCA 1982), this court reversed a trial court's finding of presumed dedication on the ground that there was insufficient evidence to support dedication under section 95.361. In Balbier, we stated that "[t]he cases indicate the statute should be strictly construed because the effect of the statute is to deprive an owner of his property in a relatively short period of time compared to acquisition of title by prescription and adverse possession." Id.
In the present case, the record is replete with evidence of the County's well-documented road maintenance history dating back to 1984. We therefore hold that competent substantial evidence supports the trial court's finding that the County maintained the road east of, and up to, the guardrail continuously and uninterruptedly for a period of over four years. Nevertheless, the trial court's findings, as they relate to the County's maintenance of the grassy area west of the guardrail, are not supported by competent substantial evidence. We find (1) no evidence in the record indicating that the County ever maintained the grassy portion of the road west of the guardrail and (2) that there was unrefuted testimony and evidence that the Chackals and the Hechts, and not the County, maintained that area to the extent appropriate under the circumstances.
Furthermore, we agree with the appellants and hold that the trial court erred when it held that the grassy area west of the guardrail is an "appurtenance" to the paved portion of the disputed strip. The statute provides that once the governmental entity meets the requirements of the dedication statute, it is entitled to "all right[s], title, easement, and appurtenances in and to the road." § 95.361(1), Fla. Stat. (2001). "Appurtenances are things belonging to another thing as principal and which pass as incident to the principal thing." Trask v. Moore, 24 Cal.2d 365, 149 P.2d 854, 856 (1944) (citing 1 BOUV. LAW DICTIONARY 224, Appurtenances (Rawle's 3d rev.)). In this regard, the trial court made written findings, which defined various structures as appurtenances:
15. The evidence is undisputed that the County, beginning in 1984, undertook to create the roadway and actually did construct the roadway and the appurtenances thereto. Those appurtenances include, without limitation, fill material placed west of the guard rail barrier on the disputed property between the barrier and the Intracoastal Waterway right of way line, . . . This fill material was necessary for lateral and subjacent support for the roadbed. This includes, without limitation, the area that was sodded (grassed) above the fill material. Sod was placed in an effort, among other things, to prevent erosion of the fill material and roadbed. This includes the submerged pipeline that runs through *956 the Disputed Strip that is utilized to drain the Suzanne Circle roadway project. . . .
16. Further, the Court finds that the riprap rock placed west of the guardrail barrier was necessarily placed where it was to provide lateral and subjacent support to the roadbed. It is appurtenant to the roadbed and is, in fact, an appurtenance as the term is utilized by the legislature in Florida Statute 95.361. The Court finds that the County has gained a right to not only the Disputed Strip, but to the area that extends west of the Disputed Strip to the end of the riprap rock, which coincides, at least in a number of photographs, with the waters edge at mean high tide.
We agree that the support material, drainage structures, and other subterranean components comprising the fundamental road infrastructure constitute appurtenances to South Suzanne Circle for the reasons cited by the trial court. Yet, we conclude that the entire grassy portion of the disputed strip that lies west of the guardrail is land itself, which cannot pass as an appurtenance to land. See S. Venice Corp. v. Caspersen, 229 So.2d 652, 655 (Fla. 2d DCA 1969) ("As a general rule, land does not pass under a deed as an appurtenance to land.") (citing Rivas v. Solary, 18 Fla. 122 (1881)). Since we find that the County has not met its burden of proving presumed dedication with respect to the grassy portion of the disputed strip located west of the guardrail, the Chackals and the Hechts retain fee simple ownership therein, subject to the easement rights of the Carleton residents and the County.
Affirmed in part; Reversed in part.
GROSS and MAY, JJ., concur.

ON MOTION FOR CLARIFICATION AND REMAND
PER CURIAM.
We grant the appellant's Motion for Clarification and Remand, which was not objected to by appellees, and remand this case to the trial court with instructions that an amended final judgment be entered consistent with this court's September 10, 2008 opinion.
STEVENSON, GROSS and MAY, JJ., concur.
NOTES
[1] In 2003, section 95.361(2), Florida Statutes, was revised to address roads that the governmental entity did not initially "construct" as follows:

(2) In those instances where a road has been constructed by a nongovernmental entity, or where the road was not constructed by the entity currently maintaining or repairing it, or where it cannot be determined who constructed the road, and when such road has been regularly maintained or repaired for the immediate past 7 years by a county, a municipality, or the Department of Transportation, whether jointly or severally, such road shall be deemed to be dedicated to the public to the extent of the width that actually has been maintained or repaired for the prescribed period, whether or not the road has been formally established as a public highway. This subsection shall not apply to an electric utility, as defined in s. 366.02(2). The dedication shall vest all rights, title, easement, and appurtenances in and to the road in:
(a) The county, if it is a county road; . . . Shortly after the legislature revised the statute, the trial court permitted the plaintiffs to amend the complaint to also state a claim under subsections (1) and (2) of the 2003 statute. Despite the revised statute that eliminates the "construction" requirement, the County's attorneys litigated this case at the bench trial solely under the former statute.