[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
Sept. 22, 2009
THOMAS K. KAHN
CLERK

_____

No. 09-11797
Non-Argument Calendar

_____

D. C. Docket No. 07-00097-CV-3-RV-EMT

DAVIS C. HAWN,

Plaintiff-Appellant,

versus

SHORELINE TOWERS PHASE 1 CONDOMINIUM
ASSOCIATION, INC.,
JEFFREY LUTHER,
NORMA FREEMAN,
JAMES L. BRAZEALE,
GREG O'BRIEN, et al.,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Florida

_____

(September 22, 2009)

Before CARNES, WILSON and KRAVITCH, Circuit Judges.

PER CURIAM:

This case was brought by Davis C. Hawn against Shoreline Phase I Condominium Association, Inc. and members of its board of directors (collectively, "Shoreline") for alleged violations of federal and state housing laws, as well as intentional infliction of emotional distress. Hawn alleges that by denying his request to permit his service dog, "Booster," in his condominium unit, Shoreline discriminated against Hawn on account of his disability. The district court granted summary judgment in favor of Shoreline on all claims. Hawn timely appealed.

## I. Facts

In June 2004, Hawn purchased a condominium unit in Shoreline Towers Phase III. According to the condominium's bylaws, owners of units must comply with regulations promulgated by Shoreline. At the time that Hawn purchased his unit, there was a sign on the property that read, "No Animals Allowed," and Hawn was aware of the existence of this sign and Shoreline's "no pets policy."

In a letter to Shoreline dated January 5, 2005, Hawn wrote that he had recently gone on vacation and acquired a puppy named Booster. Hawn stated that on his trip Booster "entertained children. . . [and was] more well behaved than I

2

ever was as a child!  He sleeps at the foot of my bed, and has even jumped into the shower to be with me."   Hawn repeatedly referred to Booster as a "pet," "pup," and even a "companion," but never as a service animal.  Hawn said that "one impediment" that kept him from "enjoying [his] home" was Shoreline's no pets policy.  Hawn recommended a change to Shoreline's policy so as to permit homeowners to "own a pet" or for Shoreline to "agree to a 6-month trial period to give folks a chance to prove that they love their pets as one would love any other family member."  Shoreline did not respond to Hawn's letter.

Hawn sent another letter to Shoreline, dated June 25, 2006, in which he claimed that he suffered from a "physical disability and psychiatric disability." Hawn alleged that he had suffered a "debilitating injury to [his] leg," resulting in pain and restricted mobility.  He also contended that "a long time [ago]" he was robbed, kidnaped, and assaulted by his friend's stepson and that, when Hawn was out of town, this person lived in Hawn's condominium unit without permission. Hawn claimed that the individual subsequently was arrested, but as a result of those experiences he "can never feel safe alone."  Hawn's letter also discussed Booster and, for the first time, referred to him as a "service animal . . . dually trained to help me both physically and psychologically."  Hawn requested that Booster be exempted from Shoreline's no pets policy.  Exhibits were attached in

3

support of this request, including: (a) a document from the Service Animal

Registry of America certifying Booster as a "Registered Service Animal";

(b) letters from Hawn's chiropractor, Dr. Hoda, and psychologist, Dr. Evans,

contending that a service animal was medically necessary for Hawn; and (c) a

description of tasks that Booster could accomplish.[1]

On August 28, 2006, Shoreline's general manager told Hawn that he needed

additional information in order to consider Hawn's request, including

documentation supporting his disability allegations and the qualifications of Drs.

Hoda and Evans. Hawn did not respond, and Shoreline sent a letter dated

September 13, 2006, which stated,

> additional information is needed for the Board to consider your
> request . . . includ[ing]: Additional expert evidence under oath of the
> nature of your impairment, the manner in which it substantially limits
one or more of your major life functions or activities, how the requested pet is
necessary to afford you an equal opportunity to use and enjoy your dwelling and if
there are other corrective measures which will permit such use and enjoyment.

The letter concluded,"[w]hile the Association sympathizes with your situation, at

this time we must deny your request to keep a pet in your condominium unit."

Hawn again failed to respond to Shoreline's request for further

documentation, but instead he filed a complaint on September 20, 2006 with the

---

[1] These included, <u>inter alia</u>, notifying Hawn of intruders, bringing the telephone upon
request, bringing socks and shoes upon request, opening the refrigerator and bringing water, and
giving a "hug" to calm Hawn after a panic attack.

4

Florida Commission on Human Relations ("FCHR"). After an investigation, the FCHR found cause to believe that Shoreline had discriminated against Hawn by refusing to reasonably accommodate his disability.

In March 2007, Hawn filed the instant action against Shoreline, seeking monetary and injunctive relief for violations of the federal and Florida Fair Housing Acts, 42 U.S.C. § 3604; Fla. Stat. § 760.23, and intentional infliction of emotional distress, all stemming from Shoreline's refusal to permit Hawn to have a service animal in his unit. On Shoreline's motion, the district court granted summary judgment in favor of Shoreline on all of Hawn's claims. With regard to the federal and state Fair Housing Act claims, the court assumed that Hawn had demonstrated that he was disabled but held that he nonetheless had failed to provide sufficient evidence to establish that (a) Shoreline knew or should have known of the disability; (b) Hawn's requested accommodation was necessary to afford him equal opportunity to use and enjoy his dwelling; or (c) the "No Animals Allowed" sign evidenced discriminatory intent on the part of Shoreline. Moreover, the court held that Shoreline's conduct was not so egregious as to constitute intentional infliction of emotional distress.

Hawn appeals the district court's grant of summary judgment as to all three of his claims. In addition to disagreeing with the district court's interpretation of

the evidence, Hawn argues that the district court failed to consider documents presented to Shoreline during the FCHR investigation and that this evidence, when coupled with the information provided to Shoreline prior to September 13, 2006, was sufficient to put Shoreline on notice of Hawn's disability and the necessity of a service dog.

## II. Standard of Review

"We review the district court's grant of summary judgment de novo, applying the same legal standards that bound the district court, and viewing all facts and reasonable inferences in the light most favorable to the nonmoving party." Cruz v. Publix Super Markets, Inc., 428 F.3d 1379, 1382 (11th Cir. 2005) (citation and quotation omitted). Summary judgment is appropriate where "there is no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

## III. Discussion

"The Florida Fair Housing Act contains statutory provisions that are substantively identical to the federal Fair Housing Act." Loren v. Sasser, 309 F.3d 1296, 1299 n.9 (11th Cir. 2002). Accordingly, we apply the same analysis to Hawn's claims under these two statutes. See id. at 1302.[2]

---

[2] This opinion will henceforth analyze Hawn's claims in the context of the federal Fair Housing Act's provisions, but the discussion applies equally to Hawn's claims brought under the

6

Hawn alleges that Shoreline violated two different provisions of Section 3604 of the Fair Housing Act: (1) Section 3604(f)(3)(B), which prohibits the denial of a reasonable accommodation that is necessary to ensure an equal opportunity for a disabled person to use and enjoy his dwelling; and (2) Section 3604(c), which prohibits "any notice, statement, or advertisement, with respect to the sale or rental of a dwelling that indicates any . . . discrimination based on . . . handicap . . . ."[3]

A.  42 U.S.C. § 3604(f)(3)(B)

To prevail on a Section 3604(f)(3)(B) claim, a plaintiff must establish that (1) he is disabled or handicapped within the meaning of the FHA, (2) he requested a reasonable accommodation, (3) such accommodation was necessary to afford him an opportunity to use and enjoy his dwelling, and (4) the defendants refused to make the requested accommodation.  See Schwarz v. City of Treasure Island, 544 F.3d 1201, 1218-19 (11th Cir. 2008).

An individual is handicapped, for the purposes of the Fair Housing Act, if he has (a) "a physical or mental impairment which substantially limits one or more of such person's major life activities," (b) "a record of such impairment," or (c) is "regarded as having such an impairment."  42 U.S.C. § 3602(h).  But, a defendant

Florida analogue.

[3] The parallel Florida provisions are found in Fla. Stat. § 760.23(9)(b) and (3), respectively.

7

"cannot be liable for refusing to grant a reasonable and necessary accommodation if [it] never knew the accommodation was in fact necessary." Schwarz, 544 F.3d at 1219 (quoting Keys Youth Servs., Inc. v. City of Olathe, 248 F.3d 1267, 1275 (10th Cir. 2001)). Other circuits have held that this means that the defendant must know or reasonably be expected to know of the existence of both the handicap and the necessity of the accommodation. See, e.g., DuBois v. Ass'n of Apartment Owners of 2987 Kalakaua, 453 F.3d 1175, 1179 (9th Cir. 2006).

Hawn argues that his June 25, 2006 letter to Shoreline was sufficient to create genuine issues of material fact as to whether Shoreline knew of Hawn's handicap and the necessity of his requested accommodation. We disagree. "[T]he duty to make a reasonable accommodation does not simply spring from the fact that the handicapped person wants such an accommodation made. Defendants must instead have . . . the ability to conduct a meaningful review of the requested accommodation . . . ." Schwarz, 544 F.3d at 1219 (quoting Prindable v. Ass'n of Apartment Owners, 304 F. Supp. 2d 1245, 1258 (D. Haw. 2003)). Hawn's June 2006 letter included unclear explanations as to the nature and extent of his disability and was wholly inconsistent with the reasons he provided in his January 2005 letter for wanting Booster in his condominium unit. Hawn's refusal to comply with subsequent requests for reasonable documentation prevented

8

Shoreline from conducting a meaningful review of Hawn's application and thereby Shoreline could not have actually known of Hawn's disability and the necessity of a service animal.

We are similarly unpersuaded by Hawn's argument that the district court erred by failing to consider the documentation made available to Shoreline during the course of the FCHR investigation. First, the district court did in fact consider such evidence; it noted in its order that Hawn's doctors completed "Medical Certification Forms," in which they "opined that plaintiff had a disability and that a service dog was necessary." Second, a review of the Medical Certification Forms reveals that they lack much of the information requested by Shoreline. The Medical Certification Forms appear to be generic forms obtained from the FCHR that merely required Hawn's doctors to check "yes" and "no" boxes and, in some spaces, provided blank lines for brief comments. The forms did not ask for – and the doctors did not provide – other information requested by Shoreline, such as Hawn's doctors' credentials. Third, aside from the documents addressed by the district court, it is unclear what other evidence was presented to the FCHR and made available to Shoreline. The Medical Certification Forms were the only documents attached to Hawn's response to Shoreline's motion for summary judgment that appear to have been created during the pendency of the FCHR

9

investigation. Finally, the FCHR's opinion, in which it found cause to believe that Shoreline had discriminated against Hawn, relies predominantly, if not exclusively, on evidence predating the filing of the FCHR complaint. It is therefore unclear what additional evidence Hawn believes was presented to Shoreline during the FCHR investigation that put Shoreline on notice of Hawn's disability and the necessity of a service animal.

Because there is insufficient evidence to create any genuine issues of material fact as to Shoreline's knowledge of Hawn's disability and the necessity of an accommodation, the district court did not err in granting summary judgment in favor of Shoreline on Hawn's 42 U.S.C. 3604(f)(3)(B) and Fla. Stat. § 760.23(9)(b) claims.

B. 42 U.S.C. § 3604(c)

With respect to the Section 3604(c) claim, Hawn alleges that summary judgment was inappropriate because the "No Animals Allowed" sign was discriminatory in nature and was posted in order to "discourage any handicap[ped] person with a service animal from renting or owning a unit on the property." Hawn argues that unlike a sign that reads "No Pets Allowed," the "No Animals Allowed" sign evidences the intent to bar all animals from the property, including a service animal for an individual that is "clearly disabled and in need of a service

10

animal." Such speculation is unsupported by the record. The sign outside of the condominium complex had been erected approximately ten years before Hawn bought his unit, and there is no evidence that Shoreline ever discriminated against any other handicapped individuals or that handicapped individuals were dissuaded from purchasing units because of the sign. Hawn has not presented any evidence of discriminatory intent or impact and has thus failed to sustain his burden to "come forward with 'specific facts showing that there is a genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)) (emphasis omitted).

We therefore conclude that the district court did not err in granting summary judgment as to Hawn's 42 U.S.C. § 3604(c) and Fla. Stat. § 760.23(3) claims.

C. Intentional Infliction of Emotional Distresss

Having disposed of the Fair Housing Act claims, we need not separately analyze Hawn's tort law claim for intentional infliction of emotional distress because his argument as to this issue is wholly premised on the allegation that Shoreline "recklessly refused to allow Hawn's service animal on the premises." See Metropolitan Life Ins. Co. v. McCarson, 467 So. 2d 277, 278-79 (Fla. 1985) (holding that in order to prevail on a claim for intentional infliction of emotional distress, a plaintiff must establish that the defendant's "conduct has been so

11

outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community"). Because we have disposed of Hawn's Fair Housing Act claims, and his intentional infliction of emotional distress argument is premised on the viability of these claims, the district court properly granted summary judgment in favor of Shoreline on this tort law claim.

## IV. Conclusion

For the reasons set forth, we **AFFIRM** the district court's grant of summary judgment in favor of Shoreline on all of Hawn's claims.