DAMOORGIAN, J.
Sun Harbor Homeowners’ Association, Inc. (“Sun Harbor”) appeals a final judgment in favor of Vincent Bonura. We reverse.
Sun Harbor is a townhouse community, which has a “no dogs allowed” policy. Bonura owns a Sun Harbor townhouse where he resides with his fiancée, Natalie Vidoni, and her dog. The underlying litigation was instituted when Sun Harbor filed a two-count complaint against Bonura seeking declaratory relief with respect to whether the presence of his fíancée’s dog on the Sun Harbor premises was a violation of the Homeowners’ Declaration of Covenants. Sun Harbor also sought removal of the dog via injunction.
Bonura responded by filing a responsive pleading and counterclaim alleging that Sun Harbor’s actions in trying to have the dog removed were in violation of Florida’s Fair Housing Act[1] and the Federal Fair Housing Act[2] because Bonura’s fiancée suffered from a disability, thus entitling her to a reasonable accommodation for the use of an emotional therapy dog. Bonura alleged that pursuant to the Federal Act and the Florida Act, Sun Harbor was on notice that his fiancée suffered from a disability. Bonura also sought damages and injunctive relief. Relevant to this appeal, prior to filing the counterclaim, neither Bonura nor Vidoni filed a complaint with the Florida Commission on Human Rights.
Sun Harbor responded to the counterclaim denying liability under the Florida and Federal Acts, and affirmatively alleging that: (i) Bonura never requested an accommodation; (ii) there was no nexus between the alleged disability and any assistance provided by the alleged service animal; (iii) the dog was not an individually trained service animal or even a service animal; (iv) Bonura produced nothing to show any accommodation was necessary; and (v) he failed to comply with the conditions precedent to pursue a claim under the Florida Act.
*265 As a preliminary matter, following a bench trial, the trial court entered a final judgment in favor of Bonura. Sun Harbor timely appealed that judgment. Shortly after Sun Harbor filed its notice of appeal, the trial court entered its “Order Withdrawing Prior Order And Substituting New Order On Non-Jury Trial” (hereinafter “Second Order”) pursuant to Florida Rule of Appellate Procedure 9.600(a). Sun Harbor filed an amended notice of appeal from both this Second Order and the original final judgment.
Rule 9.600(a) provides that the trial court shall have concurrent jurisdiction with the appellate court during the pen-dency of review to render orders on procedural matters relating to the cause. Fla. R.App. P. 9.600(a). “The correction of an error or omission properly falls within this category of procedural matters.” Luhrs v. State, 394 So.2d 137, 139 (Fla. 5th DCA 1981). Sun Harbor argues that the trial court did not have concurrent jurisdiction with this court to enter the Second Order because there were significant and substantial changes between the two orders. Bonura responds that the trial court did have jurisdiction under Rule 9.600(a) to enter the Second Order nunc pro tunc because it was correcting errors and omissions within the original order. The issue is whether the Second Order resolved an error or omission as argued by Bonura or represented a significant change in the findings of fact, reasoning, or statement of the law, as argued by Sun Harbor.
In St. Moritz Hotel v. Daughtry, 249 So.2d 27 (Fla.1971), the Florida Supreme Court explained as follows:
Only when the lower Court changes matters of substance, or resolves a genuine ambiguity, in a judgment previously rendered should the period within which an appeal must be taken or a petition for certiorari filed begin to run anew. The test is a practical one. The question is whether the lower court, in its second order, has disturbed or revised legal rights and obligations which, by its prior judgment, had been plainly and properly settled with finality.
Id. at 28 (quoting Federal Trade Comm’n v. Minneapolis-Honeywell Regulator Co., 344 U.S. 206, 211-12, 73 S.Ct. 245, 97 L.Ed. 245 (1952)); see also Wells v. State, 796 So.2d 1276 (Fla. 4th DCA 2001).
The order from which the original notice of appeal was filed granted relief only under the Federal Fair Housing Act. The Second Order not only refers to the Federal Fair Housing Act, but also discusses a violation of the Florida Act for the first time. The Second Order frames the issue as “whether Bonura is legally entitled to keep the dog at his townhouse under the Florida Fair Housing Act and [Federal] Fan* Housing Act ... ?” and goes on to state that the Federal Act was codified in the Florida Act. It then analyzes the claims under the Florida Act. Although the outcome was the same in both orders, it is obvious that the Second Order constituted more than a correction of an error or omission relating to procedural matters under Rule 9.600(a). Accordingly, we conclude that the trial court had no jurisdiction to enter the Second Order and we reverse that order. Having determined that the Second Order is a nullity, we review the final judgment from which the appeal was first taken.
Sun Harbor is governed by a 1989 Declaration of Covenants of Sun Harbor Townhomes (“Declaration”) and, relevant to this appeal, a 1997 Amendment to the Declaration (“Amendment”). Under the Amendment, Section 5, Paragraph 5.06 of the Declaration, was revised to state in pertinent part:
5.06 Animals. ... No dogs shall be allowed on any Parcel, except according *266 to the provisions of this Paragraph. Any dogs currently owned by an Owner, and presently kept on such Owner’s Parcel, as of the date of this Amendment, shall be registered with the Association on a form to be provided. Thereafter, no dogs, other than those registered as of the date of this Amendment will be allowed onto any Parcel....
Additionally under the Amendment, the dogs that were grandfathered in could be replaced if they died, but no new dogs were allowed.
The case proceeded to a bench trial during which the following facts were adduced. Bonura became a resident at Sun Harbor after the 1997 Amendment was adopted. Ms. Vidoni testified that she moved in with Bonura in January of 2009, and brought her dog to the residence approximately one month later. However, in early January 2009, Bonura received a letter from Sun Harbor that a dog was residing at his property in violation of the “no dogs allowed” policy. Bonura responded in writing stating that “the information presented is false” and “[t]here is no dog residing” at his townhouse. Sun Harbor sent another letter in February 2009 to Bonura, stating that other tenants had seen a dog and demanded that the dog be removed within fifteen days. In early March 2009, Bonura, through his attorney, admitted there was a dog living in his townhouse, that it belonged to his fiancée who resided with him, and that it was a “registered service dog” needed to assist his fiancée with an unspecified disability. Bonura demanded an accommodation. The letter included a “Registered Service Dog Certificate,” purchased online from “RegisteredServiceDogs.com.”[3]
Sun Harbor promptly advised Bonura in writing that he needed to have any request for an accommodation placed on the Association’s agenda for the next regularly scheduled Board Meeting, at which he would have to:
1. demonstrate that a resident suffers from a medical disability or handicap, unless the disability or handicap was visible, and indicating that any written information provided by the resident would not be copied or shared and would be returned after viewing;
2. demonstrate how the service animal can or will reasonably accommodate the disability;
3. demonstrate that the service animal has special skills or training to accommodate the handicap; and
4. demonstrate how the special skills and training of the service animal set it apart from an ordinary pet.
Finally, Sun Harbor instructed Bonura to notify the Association if he wanted to be placed on the agenda.
Bonura never requested to be placed on the Association’s monthly meeting agenda. Thereafter, the parties unsuccessfully participated in presuit mediation pursuant to Chapter 720, Florida Statutes, governing homeowners’ associations. Sun Harbor then filed suit. The parties attended mediation a second time, but again a resolution was not reached. However, the parties agreed that Bonura would attend the next association meeting in October of 2009 to attempt a resolution.
Both Bonura and Ms. Vidoni appeared at the October 2009 association meeting, and requested an accommodation based on the need of a therapy dog for Ms. Vidoni’s condition. Sun Harbor maintained that Ms. Vidoni and Bonura did not provide any medical documentation regarding her dis *267 ability or the training of the animal at this meeting. Ms. Vidoni and Bonura insisted that the records were with her, but no one looked at them.
In support of the claim that Ms. Vidoni had a substantial limitation on a major life activity, the following individuals testified at the bench trial: (i) Matthew J. Ross, M.D.; (ii) Antonio DeFilippo, M.D.; and (Hi) Jacquelyn Smith, R.N.
Dr. Ross testified via video deposition that he treated Ms. Vidoni between 2004 and 2005 for injuries she suffered as a result of a motor vehicle accident which occurred in 2004. He found that Ms. Vido-ni had improved throughout the treatment period, and although she continued to have lingering deficits in coordination and dexterity, he concluded that that she did not have any substantial limitation on any major life activity. Dr. Ross did not prescribe a therapy dog for Ms. Vidoni.
Dr. DeFilippo, a psychiatrist, saw Ms. Vidoni four times beginning in October 2009, some four months after the lawsuit was filed in this case. He reviewed Ms. Vidoni’s records, including a 2008 letter from Dr. Luciano Dias.[4] Dr. DeFilippo opined that he believed a therapy dog was required for Ms. Vidoni’s condition because of her ongoing depression and anxiety, and his personal observation on two occasions of her interaction with the dog, which he noticed helped her with those troubles.
Jacquelyn Smith, a nurse and friend of Ms. Vidoni who knew her prior to her accident, worked with patients with disabilities and neuromuscular disorders as well as patients involved in motor vehicle accidents. She recommended Ms. Vidoni utilize a service dog to alleviate her physical and psychological disorders. Nurse Smith observed Ms. Vidoni’s severe depression and extreme anxiety and noticed a marked improvement in Ms. Vidoni’s condition after she purchased the dog.
Ms. Vidoni also testified at the bench trial. She explained that as a result of her motor vehicle accident, she had disabilities that prevented her from attending medical school, which she had been accepted to before the accident occurred, prevented her from playing piano at her previous skill level, and affected her memory, coordination, and balance. She stated that she purchased her dog in March of 2008 upon the recommendation that it would help her with the depression and anxiety. She found that the dog provided emotional support, and helped her with her memory.
At the conclusion of the bench trial, the trial court entered its final judgment, wherein it determined that Ms. Vidoni resided with Bonura at Sun Harbor and that she was a handicapped person as defined under the Federal Fair Housing Act. Accordingly, the trial court held that Ms. Vidoni was entitled to an accommodation permitting her to possess her therapy dog.
Sun Harbor first argues that Bonura cannot maintain a claim for a violation of the Florida Act because he had not exhausted his administrative remedies by filing a complaint with the Florida Commission on Human Rights as required by the Florida Act. Although we agree that the Florida Act, as interpreted by this Court, requires exhaustion of administrative remedies as a condition precedent to the institution of a civil suit, this issue is rendered moot by our reversal of the Second Order, which conducted its analysis under the Florida Act. See Belletete v. Halford, 886 *268 So.2d 308 (Fla. 4th DCA 2004); see also §§ 760.34-.35, Fla. Stat. (2009).
Focusing our analysis on the original final judgment, we review the trial court’s decision on Bonura’s counterclaim with respect to the Federal Act to determine whether it is supported by competent, substantial evidence. Chackal v. Staples, 991 So.2d 949, 953 (Fla. 4th DCA 2008) (“On appeal, this court reviews ... any of the trial court’s findings of fact under the competent, substantial evidence standard of review.”) (citation omitted). “[T]he concern on appeal must be whether, after all conflicts in the evidence and all reasonable inferences therefrom have been resolved in favor of the verdict on appeal, there is substantial, competent evidence to support the verdict and judgment.” Tibbs v. State, 397 So.2d 1120, 1123 (Fla.1981).
Sun Harbor contends that Bonura did not prove that there was any request for accommodation and denial before suit was filed. It claims error to the extent that the trial court may have relied on any evidence from mediation to find a request for accommodation. Relying on its claim that any evidence from mediation was privileged, Sun Harbor submits that the first valid request for an accommodation was lodged at the October 2009 association meeting, after suit was filed. Thus, Bonu-ra could not demonstrate the request or denial as required elements of a claim under the Federal Act. Finally, it argues there was neither substantial, competent evidence of a handicap as required under both Acts nor that the dog was a qualified service dog.
In order to prevail on a cause of action under the Federal Act, Bonura was required to prove: (i) Ms. Vidoni’s handicap; (ii) Sun Harbor’s knowledge of the handicap; (iii) that an accommodation may be necessary to afford Ms. Vidoni an equal opportunity to use and enjoy the dwelling; (iv) that the accommodation is reasonable; and (v) Sun Harbor’s refusal to make the requested accommodation. See Prindable v. Ass’n of Apartment Owners of 2987 Kalakaua, 304 F.Supp.2d 1245, 1254 (D.Haw.2003); Dornbach v. Holley, 854 So.2d 211, 213 (Fla. 2d DCA 2002).
The Federal Act defines “handicap” as “(1) a physical or mental impairment which substantially limits one or more of such person’s major life activities, (2) a record of having such impairment, or (3) being regarded as having such an impairment. ...” 42 U.S.C. § 3602(h). Federal regulations interpret “physical or mental impairment” to include any “mental or psychological disorder,” such as “emotional illness.” 24 C.F.R. § 100.201(a)(2) (2009). Federal regulations interpret “major life activities” as “functions such as caring for one’s self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working.” 24 C.F.R. § 100.201(b) (2009). It follows that a plaintiff must first establish that at the time she requested the accommodation, she had a disability as defined by the Act. Cf. Johnston v. Henderson, 144 F.Supp.2d 1341, 1353 (S.D.Fla.2001) (discussing the necessity of proving a disability at the time an accommodation is requested to fall within the protection of the Rehabilitation Act, 29 U.S.C. § 701).
Moreover, federal courts have long recognized that a defendant has the right, in response to a demand for an accommodation, to perform a meaningful review of the request to determine if it is statutorily required. See Schwarz v. City of Treasure Island, 544 F.3d 1201, 1219 (11th Cir.2008); see also Overlook Mut. Homes, Inc. v. Spencer, 415 Fed.Appx. 617, 621 (6th Cir.2011) (“A housing provider ... is entitled to seek information from an allegedly disabled person in order to establish the *269 existence of the disability and the necessity of the accommodation.”). As the Eleventh Circuit explained in Schwarz:
[T]he duty to make a reasonable accommodation does not simply spring from the fact that the handicapped person wants such an accommodation made. Defendants must instead have been given an opportunity to make a final decision with respect to Plaintiffs’ request, which necessarily includes the ability to conduct a meaningful review of the requested accommodation to determine if such an accommodation is required by law.
Schwarz, 544 F.3d at 1219 (quoting Printable, 304 F.Supp.2d at 1258).
“Once allowed that opportunity, a violation occurs when the disabled resident is first denied a reasonable accommodation, irrespective of the remedies granted in subsequent proceedings.” Id. (citations and internal quotations omitted). Without the denial of an accommodation request, there is no discrimination under the Federal Act. Id. However, a failure to provide prompt responses to a reasonable accommodation request may function as a denial. Overlook Mut. Homes, Inc., 415 Fed.Appx. at 622.
We address whether the evidence presented proved: (i) Ms. Vidoni’s handicap; (ii) Sun Harbor’s knowledge of the handicap; and (iii) whether Sun Harbor knew of Ms. Vidoni’s request for an accommodation and refused her request, before Bonura filed his counterclaim. Bonura argues that these elements were proved through the introduction of his attorney’s March 6 and May 13, 2009 letters, the medical testimony at trial, and Ms. Vidoni’s testimony recounting the parties’ conversation and the presence of her medical records during the first mediation, which occurred before the counterclaim was filed. Furthermore, he submits the refusal to accommodate was demonstrated by the failed mediations and subsequent initiation of legal proceedings.
Sun Harbor points out that neither letter provided by Bonura’s counsel contains any evidence of a need or request for an accommodation. Sun Harbor further contends that the medical testimony does not support the finding of a handicap as defined by the statute. With respect to the information revealed during the parties’ mediation, Sun Harbor argues that the mediation privilege bars the admission of the content of the parties’ conversations that took place during mediation and anything that may have been revealed at that time.
The March 6, 2009 letter states that Ms. Vidoni is a “qualified individual with a disability.” The letter does not state how she is qualified, the limitations and difficulties she was suffering from, why she is entitled to the dog, or that the dog that occupied the residence was “necessary ... to afford [the plaintiff] equal opportunity to use and enjoy a dwelling” due to her disability, as opposed to just desirable and helpful. 42 U.S.C. § 3604(f)(3)(B). The May 13, 2009 letter is equally scant in content and provides even less than the previous correspondence.
Sun Harbor was well within its rights when it notified Bonura’s counsel that if the first letter was a request for an accommodation for a disabled person, it had to be placed on an agenda for a board meeting. Furthermore, the response detailed what Bonura would need to demonstrate at that meeting. Bonura never requested to be placed on the board meeting agenda and did not attend the next board meeting. In fact, Bonura and Ms. Vidoni only attended a board meeting months after suit was filed and after a second mediation was conducted.
*270 We conclude that both letters failed to establish that Ms. Vidoni had a handicap, that Sun Harbor knew the nature or extent of the handicap, or that Sun Harbor refused to make a reasonable accommodation. The Prindable court noted that a doctor’s letters identifying that plaintiff suffered from a mental dysfunction that impaired his ability to work along with plaintiffs contention that he suffered from depression and anxiety and had HIV were insufficient to establish a handicap within the meaning of the statute. Prindable, 304 F.Supp.2d at 1255. In Hawn v. Shoreline Towers Phase I Condo. Ass’n, Inc., 347 Fed.Appx. 464 (11th Cir.2009), the Eleventh Circuit affirmed summary judgment in favor of defendant on the issue of defendant’s knowledge of plaintiffs disability because plaintiffs letter included “unclear explanations as to the nature and extent of his disability” and he refused to comply with subsequent requests for reasonable documentation, preventing defendant from conducting a meaningful review. Id. at 468. Here, as in Prindable, the letters were insufficient to establish a handicap. Furthermore, as in Hawn, the letters provided unclear explanations as to the nature and extent of Ms. Vidoni’s disability such that Sun Harbor could not conduct a meaningful review.
We further conclude that the medical testimony at trial was insufficient to establish that Ms. Vidoni suffered from a handicap as defined by the Federal Act in 42 U.S.C. § 3602(h). Reviewing the record, there was no competent, substantial evidence indicating any substantial limitation on one or more of Ms. Vidoni’s major life activities. In fact, the testimony indicated Ms. Vidoni was able to travel and work without the dog. Along those same lines, the evidence also failed to establish the necessity of the accommodation. Ms. Vido-ni admitted that she was not as dependent on the dog as she had been originally and she could be independent of the dog at times including for work.
Turning to the propriety of the introduction of evidence of conversations which took place during the first mediation, Bonura sought to introduce information provided at mediation to establish Sun Harbor’s knowledge of Ms. Vidoni’s disability. Sun Harbor objected to any testimony relating to events which occurred during mediation on the basis of privilege. The trial court overruled the objection concluding that Sun Harbor’s counsel had waived any objection by questioning a witness regarding whether the parties had attempted to mediate. Sun Harbor did not delve into any communications taking place at mediation.
We hold that the mention of mediation taking place does not constitute a waiver of an objection to the introduction of the substantive communications involved in such mediation. As such, the trial court erred when it concluded that Sun Harbor had waived any objection and when it allowed the contents of conversations which took place during mediation into evidence. See § 44.405(1), Fla. Stat. (2009) (“[A]ll mediation communications shall be confidential.”); DR Lakes v. Brandsmart U.S.A. of West Palm Beach, 819 So.2d 971, 974 (Fla. 4th DCA 2002) (“Mediation could not take place if litigants had to worry about admissions against interest being offered into evidence at trial, if a settlement was not reached.”). Accordingly, the trial court should not have considered this evidence in reaching its factual findings and conclusions of law.
Having determined that (i) the mediation evidence was inadmissible; and that (ii) the content of the letters of March 6 and May 13, 2009 as well as the trial testimony failed to establish that Ms. Vido-ni was handicapped under the Federal Act, *271 that Sun Harbor had knowledge of this handicap or that Sun Harbor refused to accommodate Ms. Vidoni after being given an opportunity to conduct a meaningful review following a request for accommodation, we hold that Bonura failed to prove a case of disability discrimination under the Federal Act. See Prindable, 304 F.Supp.2d at 1255; Hawn, 347 Fed.Appx. at 467-68. Based upon the foregoing, we reverse and remand for entry of judgment in favor of Sun Harbor.

Reversed and Remanded.

MAY, C.J., and CONNER, J., concur.

. See § 760.20-.37, Fla. Stat. (2009).

. See 42 U.S.C. §§ 3601-3619.

. The certificate listed a Seattle, Washington address for Ms. Vidoni, although the address' zip code indicates a location in Pompano Beach, Florida.

. Although Dr. Dias never treated Ms. Vidoni, Dr. Dias prescribed a therapy dog for Ms. Vidoni during periods of travel. Additionally, Dias renewed the prescription for Ms. Vido-ni’s therapy dog for travel after the lawsuit had been filed.