[PUBLISH]

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

_____

No. 02-11090
Non-Argument Calendar

_____

D.C. Docket No. 99-02413-CV-T-30

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
OCT 17 2002
THOMAS K. KAHN
CLERK

NICOLE LOREN, BETTIE J. NEWBOLD,
CHARLENE JANKE, by and through
VERONICA AGUIRRE,

Plaintiffs-Appellants,

versus

CHARLES M. SASSER, JR.,
HERNANDO BEACH, INC., a
Florida corporation,
HERNANDO BEACH SOUTH PROPERTY
OWNERS ASSOCIATION, INC., a
Florida corporation,

Defendants-Appellees.

_____

Appeal from the United States District Court for the
Middle District of Florida

_____

(October 17, 2002)

Before BIRCH, CARNES, and HULL, Circuit Judges.

PER CURIAM:

This appeal presents the issue of whether a deed-restricted subdivision must accommodate handicapped individuals under federal and state fair housing statutes beyond allowances in the property owners' regulations as well as constitutional challenges under 42 U.S.C. § 1983. The district court granted partial summary judgment to the corporate developer and property owners' association on allegations of discrimination in violation of federal and state fair housing statutes and appellants' First and Fourteenth Amendment rights relating to placement of a chain-link fence and "For Sale" sign in their front yard. A jury determined that there was no discriminatory intent involved in the denial of appellants' application for a deck and wheelchair ramp to be constructed on the front of their home, which also is challenged for sufficiency of the evidence. We affirm.

## I. BACKGROUND

In 1997, plaintiff-appellant, Nicole Loren, jointly bought and moved into a home located at 4065 Jewfish Drive in Hernando Beach South,[1] a deed-restricted subdivision, consisting of approximately 425 lots, in Hernando Beach, Florida.[2]

---

[1] Loren is co-owner of the subject home with her sister, Veronica Aguirre, who resides in Illinois. They bought the house at a foreclosure sale for $93,000.

[2] Because it is a coastal community, all of the houses in Hernando Beach South are built on stilts or, at least, a four-foot elevation.

Loren resided in the house with her handicapped mother, plaintiff-appellant Bettie J. Newbold, who suffers from chronic osteoarthritis, high blood pressure, and has two artificial knees that cause her difficulty in using stairs,[3] and plaintiff-appellant Charlene Janke, her step-aunt, who is severely mentally retarded, blind, and has a guide dog.[4] Loren provides caretaking services for both her mother and her step-aunt. Prior to purchasing the house, Loren was given a copy of the deed restrictions for Hernando Beach South. Specifically, the deed restrictions provide as to improvements to the house and lot:

> IMPROVEMENTS. No building, addition, accessory, <u>fence</u>, television antenna or signal receiver, landscaping or other structure or improvement shall be commenced, erected, placed or maintained upon any lot, nor shall <u>any exterior addition</u> to or change or alteration be made until <u>complete written plans and specifications</u> showing the nature, kind, size (including the size and square footage of each separate room or area), driveway layout, shape, color, height, floor plan, materials, location and approximate costs of same have been submitted and <u>approved in writing</u> . . . .

R1-1-Attach. A at 1, ¶ 1 (emphasis added).

After moving into the house, appellants requested permission to construct a

---

[3] Newbold's osteoarthritis particularly has affected her legs, which has resulted in numerous reconstructive surgeries. Additionally, she sustained further injuries in an automobile accident in 1987.

[4] Janke is the legal ward of Veronica Aguirre, who brought the lawsuit on her behalf.

four-foot, chain-link fence in the front yard. The purposes for requesting the fence were "allowing JANKE to begin adjusting to her outdoor surroundings and feel secure and safe outdoors as well as indoors, to enjoy the sun and fresh air, to have her dog nearby without fear that the dog would run off or bite someone approaching the property; and affording NEWBOLD and LOREN a respite from continuous supervision without fear of JANKE wandering off." R1-1-9. Defendant-appellee Hernando Beach, Inc., the corporate developer of Hernando Beach South, through its president, defendant-appellee Charles M. Sasser, Jr., denied the request and advised Loren that fences are not permitted on the front of homes but can be constructed on the side or back of a house consistent with the deed restrictions and approvals accorded other property owners in the subdivision.[5] Because appellants' residence was a corner lot, Sasser further informed that such a fence might inhibit visibility of drivers at that intersection and, consequently, be a safety hazard.

Loren subsequently requested permission to construct a deck and wheelchair ramp on the front of the house. Appellees initially denied the request for a deck and wheelchair ramp because Loren failed to provide an adequate drawing. After

---

[5] Appellants had built a fenced dog run on the side of their home pursuant to a previous, approved application.

4

submitting a more detailed drawing, appellees denied Loren's second request for a deck and wheelchair ramp because of safety concerns for Newbold and Janke. Sasser suggested that, for the safety of the handicapped individuals, the deck and ramp should be built in the garage, which would be the safest and most appropriate place for the ramp. Because the deck and wheelchair ramp were intended for the front of the house, Sasser further informed Loren that her proposed deck and wheelchair ramp did not conform with other approved decks in the subdivision, which were on the back of the houses. Shortly after making the requests for the fence and the deck and ramp, Newbold and Janke fell down the stairs leading to the garage and sustained various injuries.

The denials of Loren's requests, combined with Newbold and Janke's fall, prompted Loren to decide to move from the subdivision. The deed restrictions in Hernando Beach South prohibit homeowners from displaying any "signs or advertisements" on the property, unless specifically approved.[6] R1-Attach. A-2, ¶

---

[6] The operative deed restrictions provide in pertinent part as follows relative to signs:

> SIGNS. No signs or advertisements shall be displayed on the lots, right-of-way, or any other part of the Subdivision, except as specifically designated and approved by Hernando Beach, Inc. Hernando Beach, Inc. shall have the right to enter upon any vacant lot for the purpose of removing any sign displayed in violation of this Section, and shall not be liable in any way for such entry or removal.

5

9. Loren requested permission to put a "For Sale" sign on the property to expedite sale of the house, which defendant-appellee Hernando Beach South Property Owners Association, Inc. ("HBSPOA") denied.[7] Loren sought a preliminary injunction enjoining HBSPOA from enforcing the sign restriction, which was denied by the district court. Nevertheless, Loren placed a generic "For Sale" sign in the yard, sold the house, and relocated to Chicago, Illinois.[8]

Loren, Newbold, and Janke, who originally were represented by counsel, filed a six-count complaint against Sasser, Hernando Beach, Inc., and HBSPOA. Counts I and II allege discrimination in violation of the Fair Housing Act, 42 U.S.C. § 3601 et seq., and the Florida Fair Housing Act, Fla. Stat. § 760.20 et seq.,[9] for refusing permission to construct a chain-link fence in the front yard.

---

R1-1-Attach. A-2, ¶ 9.

[7] HBSPOA is a nonprofit corporation which succeeded corporate developer Hernando Beach, Inc. in enforcing the deed restrictions of the subdivision. Through assignment and transfer of the developer's rights under the Restriction Agreement on April 3, 1999, HBSPOA became the entity with authority to modify, amend, and enforce the deed restrictions for Hernando Beach South.

[8] The house was sold for $140,000.

[9] The Florida Fair Housing Act contains statutory provisions that are substantively identical to the federal Fair Housing Act, and the facts and circumstances that comprise the federal and state fair housing claims are the same. See 28 U.S.C. § 1367(a) (permitting "supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy").

Specifically, they alleged that the requested front-yard fence was a reasonable modification necessary to afford Newbold and Janke safe and full enjoyment of the property. Counts III and IV alleged discrimination in violation of federal and state fair housing statutes for refusing permission to construct a deck and wheelchair ramp on the front of the house. Counts V and VI sought an injunction and damages pursuant to 42 U.S.C. § 1983 and asserted that appellees' refusal to waive the deed restriction prohibiting "For Sale" signs, combined with the threat of judicial enforcement, constituted a violation of their First and Fourteenth Amendment rights.

Hernando Beach, Inc. and HBSPOA filed a motion to dismiss Counts V and VI and argued that Loren, Newbold, and Janke did not state a cause of action upon which relief could be granted because they failed to satisfy the factors required for injunctive relief. Sasser filed a motion to dismiss all counts in the complaint because he was acting in his capacity as president of Hernando Beach, Inc., and not in his individual capacity.

With these motions still pending, HBSPOA filed a motion for summary judgment as to Counts V and VI and argued that it was not a state actor as required to bring a suit pursuant to § 1983. Hernando Beach, Inc. also filed a motion for

7

summary judgment as to Counts I through VI. Sasser contemporaneously filed a motion for summary judgment and incorporated the arguments made by Hernando Beach, Inc. as well as the arguments that he made in his motion to dismiss.

After conducting a hearing on these motions,[10] the district judge issued an order granting in part and denying in part appellees' motions. Regarding the sign restriction counts, the district judge found that appellees were not state actors, which is required to bring suit under § 1983. Thus, he granted summary judgment to all three appellees as to Counts V and VI.[11]

The district judge then addressed the reasonable accommodation claims. Regarding the chain-link fence claims, appellees argued that they were entitled to summary judgment because (1) appellants failed to submit complete written plans of the proposed fence for approval as required by the deed restrictions; and (2) the denial of the request for a chain-link fence in the front yard was not unreasonable and did not discriminate against handicapped persons because they could put a chain-link fence in the back yard. As required, the district judge viewed the

---

[10] The record does not contain the transcript of this hearing.

[11] HBSPOA argued that only the sign counts (Counts V and VI) were brought against it. Appellants disputed this claim and argued that all six counts were brought against HBSPOA. Viewing the evidence most favorably toward appellants, the district court reviewed all the claims as pertaining to HBSPOA.

8

evidence most favorably toward appellants and presumed that Loren correctly filed the request for the front-yard, chain-link fence. Nonetheless, the district judge found that appellees were entitled to summary judgment on the chain-link fence counts (Counts I and II) because Loren, Newbold, and Janke "ha[d] not established that this accommodation, even if reasonable, was denied with discriminatory intent or was necessary to afford Plaintiffs 'equal opportunity to use and enjoy' their dwelling." R5-100-12. Regarding the deck-and-ramp counts, the district judge found that plaintiffs had produced some evidence from which a factfinder could conclude that denial of appellants' application to construct a deck and wheelchair ramp was discriminatory. Id. Accordingly, the district judge denied appellees' motion for summary judgment regarding the deck-and-ramp counts (Counts III and IV), which proceeded to trial.[12]

Following a four-day trial, the jury returned a verdict in favor of appellees and determined that they did not discriminate by refusing to approve the request for a deck and wheelchair ramp on the front of the house.[13] The district judge

---

[12] Following the district court's order regarding summary judgment, but prior to trial, the district judge granted appellants' counsel's motion to withdraw. Thus, Loren, Newbold, and Janke proceeded to trial pro se.

[13] The judgment, prepared and signed by a deputy clerk, also dismissed HBSPOA from the case. R7-155.

construed "PLAINTIFFS' MOTION FOR LEAVE OR STAY AND TO PROCEEDING IN DIRECT APPEAL TO THE UNITED STATES COURT OF APPEAL ELEVENTH CIRCUIT COURT TO PROCEED IN FORMA PAUPERIS FOR A NEW JURY TRIAL WITH APPOINTED COUNSEL AND APPOINTED EXPERT WITNESS'S ON A APPEAL OF RIGHT," R7-157, as a notice of appeal and denied their motion for new trial and to proceed in forma pauperis because they failed to provide adequate substantiation to warrant such relief. On appeal, appellants challenge the district judge's granting summary judgment to appellees regarding discrimination in violation of the fair housing statutes and appellees' violation of plaintiffs' First and Fourteenth Amendment rights under 42 U.S.C § 1983 as well as argue that there was insufficient evidence for the jury to conclude that appellees did not discriminate by refusing to approve appellants' application for a wheelchair ramp and deck.[14]

---

[14] We note that the various arguments presented in appellants' pro se briefs are difficult to discern. Nevertheless, we believe that we have addressed the issues presented in our analyses.

## II. DISCUSSION

A. <u>Summary Judgment on Counts I, II, V, and VI</u>

Loren, Newbold, and Janke argue on appeal that the district judge erred in granting summary judgment to appellees on their claims relating to the chain-link fence, Counts I and II, and the "For Sale" sign, Counts V and VI. In the summary-judgment context, we have construed <u>pro se</u> pleadings more liberally than those of a represented party. <u>Harris v. Ostrout</u>, 65 F.3d 912, 915 (11th Cir. 1995) (per curiam). Our court "reviews the granting of summary judgment <u>de novo</u>" and "appli[es] the same legal standards which bound the district court." <u>Id.</u> Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323-24, 106 S.Ct. 2548, 2553 (1986). The party opposing summary judgment must show that there is a genuine issue of material fact that precludes summary judgment and warrants trial. Fed. R. Civ. P 56(e); <u>Clark v. Coats & Clark, Inc.</u>, 929 F.2d 604, 608 (11th Cir. 1991). "In determining whether a genuine issue of material fact remains for trial, courts must view all evidence and

11

make all reasonable inferences in favor of the party opposing summary judgment." Harris, 65 F.3d at 915. "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990).

1.The Chain-Link Fence, Counts I and II

Loren, Newbold, and Janke argue that appellees discriminated against them by denying their application for a chain-link fence in their front yard because this fence was a reasonable modification of their property to permit the handicapped residents, Newbold and Janke, a safe and equal opportunity for full enjoyment of the premises under the Fair Housing Act. They assert that the chain-link fence was reasonable to permit Janke time outdoors with her guide dog without the possibility of her wandering from the premises and to prevent her guide dog from biting individuals who might come onto the property. They further represent that the front yard provides a more scenic space for her time outside than other parts of the lot.

Under the Fair Housing Act, a handicapped individual is one who has "(1) a physical or mental impairment which substantially limits one or more of such

12

person's major life activities, (2) a record of having such an impairment, or (3) be[en] regarded as having such an impairment."  42 U.S.C. § 3602(h)(1)-(3).  The district judge correctly considered Newbold and Janke to be handicapped under the Fair Housing Act, which prohibits

> (A) a refusal to permit, at the expense of the handicapped person, <u>reasonable modifications</u> of existing premises occupied or to be occupied by such person if such modifications may be necessary to afford such person full enjoyment of the premises . . . . [or]
> (B) a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary <u>to afford such person equal opportunity to use and enjoy a dwelling</u> . . . .

42 U.S.C. § 3604(f)(3)(A) & (B) (emphasis added); Fla. Stat. § 760.23(9)(a) & (b) (identical statutory wording).

The Supreme Court has decided that discrimination under the Fair Housing Act  includes a refusal to make a "reasonable accommodation" for handicapped persons.  <u>City of Edmonds v. Oxford House, Inc.</u>, 514 U.S. 725, 729-30, 115 S.Ct. 1776, 1779 (1995).  "Whether a requested accommodation is required by law is 'highly fact-specific, requiring case-by-case determination.'"  <u>Groner v. Golden Gate Gardens Apartments</u>, 250 F.3d 1039, 1044 (6th Cir. 2001) (citation omitted).  Under the Fair Housing Act, plaintiffs have the burden of proving that a proposed accommodation is reasonable.  <u>Groner</u>, 250 F.3d at 1045; <u>Bryant Woods Inn, Inc.</u>

13

v. Howard County, Md., 124 F.3d 597, 603-04 (4th Cir. 1997); Elderhaven, Inc. v. City of Lubbock, Tex., 98 F.3d 175, 178 (5th Cir. 1996).

There is no evidence in this record that Hernando Beach, Inc., HBSPOA or Sasser discriminated against appellants by denying their request for a chain-link fence in their front yard. Appellants failed to introduce any evidence that other houses in the deed-restricted subdivision have been permitted to construct fences on the front of their property. Appellees informed appellants that they would approve construction of a chain-link fence on the back or the side of their house. For the specific reasons of preventing Janke from wandering from the premises, prohibiting her guide dog from biting anyone entering onto the premises, and enabling Newbold and Janke the ability to be outside unsupervised, a chain-link fence on the back or side of the house would accomplish the same purposes by providing an opportunity to be outdoors safely within the deed restrictions of the subdivision. While a chain-link fence on the back or side yard of their property may not be appellants' preference, it nevertheless would be a reasonable accommodation for the asserted needs of the handicapped appellants. We conclude that the district judge properly granted summary judgment to appellees on Counts I and II relating to the front-yard, chain-link fence because appellants have not

14

established a genuine issue of material fact to show that appellees discriminated against them in violation of the Fair Housing Act by denying their application for a front-yard, chain-link fence, when a reasonable accommodation, compliant with the deed restrictions of the subdivision, was available to serve the stated purposes of appellants.

2.The "For Sale" Sign, Counts V and VI

Appellants complain that HBSPOA's denying permission to post a "For Sale" sign in their front yard to expedite sale of their house with potential judicial enforcement of the deed restriction barring display of signs on the subdivision lots constituted state action and thereby denied appellants' rights under the First and Fourteenth Amendments.  To succeed on a 42 U.S.C. § 1983 claim, a plaintiff must show that the violative conduct "was committed by a person acting under the color of state law" and that the "conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States."  Parratt v. Taylor, 451 U.S. 527, 535, 101 S.Ct. 1908, 1913 (1981); Fullman v. Graddick, 739 F.2d 553, 561 (11th Cir. 1984).  State action requires that the defendant acted under color of state law at the relevant time.  Almand v. DeKalb County, Ga., 103 F.3d 1510, 1513 (11th Cir. 1997).  Actions by private organizations may be

15

considered state action "only if[] there is such a 'close nexus between the State and the challenged action' that seemingly private behavior 'may be fairly treated as that of the State itself.'" Brentwood Acad. v. Tennessee Secondary Sch. Athletic Ass'n, 531 U.S. 288, 295, 121 S.Ct. 924, 930 (2001) (quoting Jackson v. Metropolitan Edison Co., 419 U.S. 345, 351, 95 S.Ct. 449, 453 (1974)).

Appellant's argument, that the threat of judicial enforcement of the deed restriction constitutes state action, is unavailing. Although the Supreme Court has held that the enforcement of a racially restrictive covenant constitutes state action, Shelley v. Kraemer, 334 U.S. 1, 19-20, 68 S.Ct. 836, 845 (1948), Shelley has not been extended beyond race discrimination, Davis v. Prudential Secs., Inc., 59 F.3d 1186, 1191(11th Cir. 1995). The record in this case clarifies that Sasser, Hernando Beach Inc., and HBSPOA were not acting under state law. See Sofarelli v. Pinellas County, 931 F.2d 718, 723 (11th Cir. 1991) (recognizing that the conduct of private individuals "does not rise to the level of state action"). Therefore, summary judgment correctly was granted to appellees on Counts V and VI relating to the "For Sale" sign because appellants failed to establish state action required for a cause of action under § 1983.

B. Sufficiency of the Evidence to Support the Jury Verdict on Counts III and IV

Appellants allege various evidentiary errors committed by the district judge in conducting the trial of this case on Counts III and IV relating to their application for construction of a deck and wheelchair ramp on the front of their house. We review a challenge to sufficiency of the evidence de novo; we view the facts and inferences therefrom in the light most favorable to the plaintiff and determine whether the evidence is "so overwhelmingly in favor of the [defendant] that reasonable jurors could not arrive at a contrary verdict." Adams v. Sewell, 946 F.2d 757, 764 (11th Cir. 1991), overruled on other grounds, McKinney v. Pate, 20 F.3d 1550, 1558 (11th Cir. 1994) (en banc). Appellants, however, failed to provide a copy of the trial transcript in the appellate record in compliance with Federal Rule of Appellate Procedure 10(b)(1) & (2). See 11th Cir. R. 10-1.

Federal Rule of Appellate Procedure 10(b)(2) provides that "[i]f the appellant intends to urge on appeal that a finding or conclusion is unsupported by the evidence or is contrary to the evidence, the appellant must include in the record a transcript of all evidence relevant to that finding or conclusion." Fed. R. App. P. 10(b)(2). The record shows that appellants attempted to order the trial transcript on the same day that they filed a motion to proceed in forma pauperis on appeal. R7-161, 162. The district judge denied their in forma pauperis motion because

appellants' indigence had not been established, and it appeared to the judge that they were attempting to obtain a free trial transcript for which they were not eligible. Appellants have neither moved to proceed in forma pauperis in this court nor provided the trial transcript in the appellate record. Accordingly, we cannot review whether any evidentiary errors were committed by the district judge during the trial of this case, and we must affirm the district court when an appellant fails to provide all the evidence that the trial court had before it when making various contested evidentiary rulings. Borden, Inc. v. Florida East Coast Ry. Co., 772 F.2d 750, 758 (11th Cir. 1985).

The appellant in Borden was not a pro se litigant, and our court has not used Rule 10(b)(2) for pro se litigants who have failed to provide transcripts for review on appeal. The Fifth and Ninth Circuits, however, have applied Rule 10(b)(2) to preclude review when pro se litigants have not supplied trial transcripts in the appellate record. See Richardson v. Henry, 902 F.2d 414, 415-16 (5th Cir. 1990) (holding that the failure of an appellant to provide a trial transcript is grounds for dismissal of the appeal notwithstanding inability to pay for it); Syncom Capital Corp. v. Wade, 924 F.2d 167, 169 (9th Cir. 1991) (per curiam) ("'Because [appellant] did not provide a transcript of the trial, this court cannot properly

18

review this case on appeal.'" (alteration in original) (citation omitted)). Despite construction leniency afforded pro se litigants, we nevertheless have required them to conform to procedural rules. Brooks v. Britton, 669 F.2d 665, 666-67 (11th Cir. 1982) (holding that pro se litigants are required to move timely for extension of time in order to file a late notice of appeal pursuant to Federal Rule of Appellate Procedure 4(a)(5)). We agree with the reasoning of the Fifth and Ninth Circuits regarding pro se litigants' failing to provide trial transcripts for appellate review, which we adopt and hold in this circuit that pro se appellants, like appellants represented by counsel, must provide trial transcripts in the appellate record to enable this court to review challenges to sufficiency of the evidence. Accordingly, we affirm the district judge's trial rulings regarding Counts III and IV relating to appellants' application for construction of a deck and wheelchair ramp on the front of their home.

### III. CONCLUSION

In this appeal, Loren, Newbold, and Janke have contested the district judge's granting summary judgment to Sasser, Hernando Beach, Inc., and HBSPOA on their allegations of violations of federal and state fair housing statutes relating to their application to construct a chain-link fence on the front of their premises as

well as the decision of HBSPOA to deny appellants' request for permission to display a "For Sale" sign in their front yard. As we have explained, partial summary judgment to appellees was appropriate because appellants failed to show that appellees violated the federal or state fair housing statutes by acting with discrimination in denying appellants' application for a chain-link fence in their front yard, and they failed to establish state action for their § 1983 claims concerning the "For Sale" sign in their front yard. Appellants also challenge the sufficiency of the evidence to support the jury verdict for appellees as to their denying appellants' application for construction of a deck and wheelchair ramp on the front of their house. We cannot review appellants' contentions regarding sufficiency of the evidence on the counts that were tried as to the appellants' application for construction of a deck and wheelchair ramp on the front of their home because they failed to provide the trial transcript. Accordingly, the district court's granting partial summary judgment to appellees and the jury verdict in favor of appellees are **AFFIRMED**.