Jeffrey WEISS and Judith
A. Weiss, Plaintiffs,

v.

2100 CONDOMINIUM ASSOCIATION,
INC. et al., Defendants.

Case No. 12–CV–80065.

United States District Court,
S.D. Florida,
West Palm Beach Division.

April 8, 2013.

Matthew Wilson Dietz, Matthew W. Dietz, Miami, FL, for Plaintiffs.

Kyle Thomas Berglin, William Todd Boyd, Boyd Richards Parker & Colonnelli, P.L., Miami, FL, for Defendants.

## ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

KENNETH L. RYSKAMP, District Judge.

**THIS CAUSE** comes before the Court on Defendants' motion to dismiss [**DE 29**] filed on June 5, 2012. Plaintiffs filed a response in opposition [**DE 37**] on July 3, 2012. Defendants replied [**DE 38**] on July 10, 2012. In light of extrinsic evidence submitted by Defendants with their motion to dismiss, the Court converted the motion into one for summary judgment on October 17, 2012. *See* [**DE 48**]. Parties filed additional briefing [**DE 51, 56**] and the Court held a hearing on the matter on March 7, 2013. This motion is ripe for adjudication.

### I. Background

Plaintiffs Jeffrey and Judith Weiss ("Plaintiffs"), husband and wife, bring this action against Defendants 2100 Condominium Association, Inc. (the "Association") and Robert Davidow (collectively, "Defendants") for discrimination under the Federal and Florida Fair Housing Acts. Plaintiffs allege Defendants failed to make reasonable accommodations and modifications for their disabled son to access the beach at the condominium where Plaintiffs reside. Specifically, Plaintiffs contend that Defendants violated the Housing Acts by (1) refusing to provide Plaintiffs golf cart transportation for their son to the beach; (2) failing to construct a more accessible ramp or walkover structure to traverse the dune and access

the beach; and (3) failing to maintain the existing walkover structure and dune in such a way as to preserve an accessible pathway to the beach.

Defendants' condominium is located in Southern Florida along a stretch of shoreline designated as "critically eroded" by the Florida Department of Environmental Protection ("DEP"). This shoreline is under constant flux given its natural conditions: the steep beach grade and strong currents cause frequent inundation and scarping of the beach. As a result, any changes or modifications to the beach are subject to approval by the DEP. The shoreline is further protected by the DEP as natural nesting grounds for sea turtles and habitat for native dune vegetation. Generally, only the municipality, which adds and moves sand as part of restoration projects, may excavate or alter the shoreline's natural ecology.

Pertinently, the beach dune adjacent to the condominium has been destroyed numerous times in the past decade. After a storm in 2006, the condominium's access to the beach, a wooden staircase, was partially buried by the municipality in attempt to restore the shoreline. In 2009, erosion resulted in a steep escarpment from the bottom of the staircase to the beach. As a result, the DEP permitted the Association to install temporary aluminum stairs to bridge the escarpment. In 2012, however, Tropical Storm Sandy destroyed much of the beach dune. In so doing, however, it uncovered the portion of the stairs buried by the municipality in 2006, leaving the Association currently waiting assessment by the regulatory bodies as to what action will be taken. In all, erosive events, coupled with regulatory restrictions, make excavating or modifying the condominium's beachfront difficult if not impossible.

Plaintiffs have trouble accessing the beach with their disabled son over the aluminum stairs. In the past, an Associa-tion employee, Wendell Russell, helped to transport the Plaintiffs' son in a maintenance golf cart to a grassy knoll atop the beach, where Plaintiffs would then gain access to the water by using the wooden staircase or traversing the beach dune. Now, however, the beach dune is escarped substantially so that Plaintiffs only point of access is over the aluminum stairs. Their son is too heavy for Plaintiffs to use the stairs safely, however.

Plaintiffs requested Defendants to make accommodations and modifications so that they could gain access to the beach. Specifically, on May 5, 2011, Plaintiffs' counsel sent the Association a letter with two requests: (1) that the Association rebuild the staircase to the beach (the Association was planning to rebuild the staircase that summer) as an accessible ramp; and (2) that the Association provide golf cart transportation for the Plaintiffs to transport their son to the beach. The Association responded on June 6, 2011 and denied Plaintiffs' requests. It notified Plaintiffs that any change in the construction of the beach access to include a ramp was not permitted by the DEP, and moreover, such a request did not constitute a "reasonable accommodation" under the Fair Housing Act ("FHA"). The Association further noted that it did not believe such a request constituted a "reasonable modification" under the FHA either, and if it did, such modification would only be performed at Plaintiffs' expense. The Association refused to provide golf cart transportation on the grounds that such a service was outside the scope of the maintenance employees' responsibilities and would expose the Association to additional liability. However, it did offer Plaintiffs the option to purchase their own golf cart and keep it in the garage.

Plaintiffs replied on June 14, 2011 requesting that the Association consider re-

building a ramp at the north edge of the property. The proposed access point was 100 yards north of where the staircase was located. There, the beach dune was not as steep and beach access was more practical. Alternatively, the Association could consider placing mats on the beach in lieu of a ramp. Plaintiffs directed the Association to provide accounting for the new staircase, and assured the Association they would find a contractor to build an accessible ramp within that budget. Plaintiffs also requested that the Association reconsider extending golf cart service for Plaintiffs to transport their son.

In response, the Association stated that it would not move the beach access to a non-centrally located area at the north end of the property and allow the ailing staircase to remain. It would, however, consider building a ramp in place of a staircase if Plaintiffs obtained engineering plans and DEP approval to do so. The Association offered to put forward $7,500.00—its budget to rebuild the stairs—towards the construction of the ramp, and it requested more information from Plaintiffs regarding their request to install mats. The Association reaffirmed its refusal to provide golf cart transportation to the beach and provided Plaintiffs with an accounting for the proposed staircase and contact information for the DEP.

Further correspondence between Plaintiffs and the Association ensued. Plaintiffs continued to express disapproval at the Association's offers but took no action in furtherance of building a ramp: they did not obtain architectural drawings for a ramp or approval of such from the DEP; they did not submit an alternative accounting for building a ramp from a contractor; and they failed to provide information about the installation or use of mats as requested by the Association. Plaintiffs openly refused to pay any costs associated with the ramp, contending it would be an unduly high burden. Throughout the correspondence the Association remained open to conciliation, even offering to consider Plaintiffs' request for a north end ramp on the condition that it would be paid for by Plaintiffs while the Association rebuilt the central staircase. Plaintiffs, however, never responded.

Plaintiffs filed an administrative complaint against Defendants with the Palm Beach County Office of Equal Opportunity on August 26, 2011. The agency determined that there were no reasonable grounds to find that Defendants violated the fair housing laws by denying Plaintiffs a reasonable accommodation or modification. A week later, Plaintiffs requested their complaint be withdrawn. On January 25, 2012, Plaintiffs filed this suit against Defendants. Plaintiffs assert the same claims brought before the Office of Equal Opportunity: that Defendants' failure to provide golf cart transportation, construct an accessible ramp, and maintain an accessible pathway over the beach dune amount to discrimination under the reasonable modifications and accommodations provisions of the Housing Acts.

Defendants move for summary judgment on the grounds that Plaintiffs' requests were not reasonable, and moreover, Plaintiffs' latter requests concerning Defendants' alleged failure to construct an accessible ramp and maintain the dune are requests for modifications for which Plaintiffs did not offer to pay as required under the Housing Acts. Further, Defendants move for sanctions against Plaintiffs under this Court's inherent authority. Defendants argue that Plaintiffs' claims against it are frivolous and made in bad faith, and that Plaintiffs intentionally misrepresented facts in the complaint.

To date, the Court is unaware of any action taken by Defendants in regards to

the reconstruction of the staircase.[1]

## II. Legal Standard on Motion for Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). The movant "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (quoting Fed.R.Civ.P. 56(c)(1)(A)). Where the non-moving party bears the burden of proof on an issue at trial, the movant may simply "[point] out to the district court that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325, 106 S.Ct. 2548.

■ After the movant has met its burden under Rule 56(c), the burden shifts to the nonmoving party to establish that there is a genuine issue of material fact. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Although all reasonable inferences are to be drawn in favor of the non-moving party, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), he "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586, 106 S.Ct. 1348. The non-moving party may not rest upon the mere allegations or denials of the adverse party's pleadings, but instead must come forward with "specific facts showing that there is a *genuine issue for trial.*" *Id.* at 587, 106 S.Ct. 1348 (citing Fed.R.Civ.P. 56(e)). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Id.* "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir.1990). If the non-moving party fails to make a sufficient showing on an essential element of his case on which he has the burden of proof, the moving party is entitled to a judgment as a matter of law. *Celotex Corp.*, 477 U.S. at 323, 106 S.Ct. 2548.

## III. Discussion

"The Florida Fair Housing Act contains statutory provisions that are substantively identical to the federal Fair Housing Act." *Loren v. Sasser*, 309 F.3d 1296, 1299 n. 9 (11th Cir.2002). Accordingly, the Court applies the same analysis to Plaintiffs' claims under these two statutes. *See id.* at 1302.

The FHA makes it illegal to discriminate "against any person in the terms, conditions, or privileges of sale or rental of

---

1. In their additional memorandum filed with the Court pursuant to the Court's order converting Defendants' motion to dismiss into a motion for summary judgment, Plaintiffs submitted additional plans for a dune walkover structure constructed by Defendants in the course of mediation. *See* **[DE 51]**. The Court strikes Plaintiffs' mention of these plans as a basis to establish the liability of Defendants pursuant to Local Rule 16.2(g)(2), which prohibits disclosure of information derived from a mediation conference or in furtherance thereof. *See* S.D. Fla. L.R. 16.2(g)(2); *Rodriguez v. Marble Care Int'l, Inc.*, 863 F.Supp.2d 1168, 1181 (S.D.Fla.2012).

Given Defendants' inaction, concerns arise over whether Plaintiffs' claim in regards to the construction of a ramp is ripe. The issue of ripeness was not raised by either party but is discussed below. *See infra* III, B. n. 2.

a dwelling, or in the provision of services or facilities in connection with such a dwelling, because of a handicap ..." 42 U.S.C. § 3604(f)(2). Under the FHA, handicap discrimination includes:

(A) a refusal to permit, at the expense of the handicapped person, reasonable modifications of existing premises occupied or to be occupied by such person if such modification may be necessary to afford such person full enjoyment of the premises; [reasonable modifications provision]

(B) a refusal to make reasonable accommodations in rules, policies, practices or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling. [reasonable accommodations provision]

§§ 3604(f)(3)(A), (B). In regards to Defendants' alleged failure to build an accessible ramp and modify the beach dune, Plaintiffs bring claims for discrimination under both the reasonable accommodations and reasonable modifications provisions of the FHA. As such, the Court will determine whether Plaintiffs' claims are requests for accommodations or modifications and analyze them accordingly below.

**A. Defendants' Refusal to Provide Plaintiffs Golf Cart Transportation**

Plaintiffs claim that Defendants failed to make a reasonable accommodation in violation of § 3604(f)(3)(B) by refusing to provide Plaintiffs' golf cart transportation for their son to the beach.

██ To prevail on a claim brought pursuant to § 3604(f)(3)(B), a plaintiff must establish that (1) he is disabled or handicapped within the meaning of the FHA, (2) he requested a reasonable accommodation, (3) such accommodation was necessary to afford him an opportunity to use and enjoy his dwelling, and (4) the defendants refused to make the requested

accommodation. *Hawn v. Shoreline Towers Phase 1 Condo. Ass'n, Inc.*, 347 Fed. Appx. 464, 467 (11th Cir.2009) (citing *Schwarz v. City of Treasure Island*, 544 F.3d 1201, 1218–19 (11th Cir.2008)). A plaintiff, however, is not entitled to the accommodation of his or her choice, but is entitled only to a reasonable accommodation. *Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1286 (11th Cir.1997). "Whether an accommodation is reasonable depends on specific circumstances." *Terrell v. USAir*, 132 F.3d 621, 626 (11th Cir.1998); *see also Loren v. Sasser*, 309 F.3d 1296, 1302 (11th Cir.2002) ("Whether a requested accommodation is required by law is highly fact-specific, requiring a case-by-case determination.") (internal quotation marks omitted).

██ Here, there is no dispute that Plaintiffs' son is disabled. Rather, Defendants contend that Plaintiffs request for golf cart transportation service is unreasonable. The Court agrees. Defendants do not, and did not, provide golf cart transportation to the condominium's residents. It has never been a service provided by the Association. Wendell Russell ("Russell"), an employee of the Association, helped Plaintiffs transport their son to the beach on three occasions. As a pool attendant, Russell's assist was outside the scope of his duties and without authorization or knowledge of Defendants. The golf cart on which Russell transported Plaintiffs and their son contain one bench designed to seat two people. Russell is not medically trained to assist in the care or transportation of a disabled child. To continue this practice would unreasonably expose Defendants to liability and endanger the safety of Plaintiffs' and their son. The Court finds that this practice is far outside the scope of the "essential" services provided by the Association and would constitute a fundamental alteration of Defendants' services. *See Sch. Bd. of Nassau Cty. v. Arline*, 480 U.S. 273, 288 n. 17, 107

S.Ct. 1123, 94 L.Ed.2d 307 (1987) (finding that an accommodation is not reasonable if it requires a fundamental alteration in the nature of a defendant's services); *Schwarz*, 544 F.3d at 1220 (finding that "a proposed accommodation amounts to a "fundamental alteration" if it would eliminate an "essential" aspect of the relevant activity"). Therefore, the Court holds that Plaintiffs request is not reasonable under § 3604(f)(3)(B).

■ Even assuming, *arguendo*, that Plaintiffs' request for golf cart transportation service was reasonable, Plaintiffs are not entitled to the reasonable accommodation of their choosing. *See Stewart*, 117 F.3d at 1286. Rather, Plaintiffs are only entitled to a reasonable accommodation. *See id.* Here, Defendants offered to allow Plaintiffs to store and use a golf cart on Association property to transport their son to the beach. Defendants even went so far as to provide golf cart brochures to Plaintiffs. This was an alternative accommodation and alteration of the Associations' policies which would effectively meet Plaintiffs' disability related needs. Therefore, the Court finds that this is a reasonable accommodation under § 3604(f)(3)(B) and Defendants are entitled to summary judgment on this claim.

## B. Defendants' Failure to Construct an Accessible Ramp or Dune Walkover Structure

■ Plaintiffs' second claim is that Defendants failed to provide a reasonable accommodation or modification under the FHA by refusing to construct a handicap accessible ramp in lieu of a staircase to the beach. The Court first must decide whether Plaintiffs' request for reconstruction of the staircase is a request for an accommodation or modification under § 3604(f)(3).[2]

■ The plain language of the FHA defines accommodations in terms of reasonable accommodations in "rules, policies, practices, or services." § 3604(f)(3)(B). Subsection (B) makes no mention of adjustments or improvements to existing structures, and, in contrast with § 3604(f)(2), fails to make any mention of "facilities." To the contrary, while subsection (B) does not define modifications, the Department of Housing and Urban Development's regulations provide that a modification is "any change to the public or common use areas of a building or any change to a dwelling unit." 24 C.F.R. § 100.201. Thus, the plain language of § 3604(f)(3)(B), read in conjunction with the statute as a whole, directs the conclusion that a request for (re)construction or repair is more appropriately a request for a modification than an accommodation. *See Fagundes v. Charter Builders, Inc.*, No. C07–1111, 2008 WL 268977, at *6 (N.D.Cal. Jan. 29, 2008) ("This Court agrees that a request for construction or repair is not actionable under subsection (B).").

2. As noted above, Defendants have yet to actually reconstruct the staircase to the beach. Thus, concerns of whether Plaintiffs' claim is ripe must be addressed. Under the FHA, "a violation occurs when the disabled resident is first denied a reasonable accommodation [or modification], irrespective of the remedies granted in the subsequent proceedings." *Bryant Woods Inn, Inc. v. Howard County, Md.*, 124 F.3d 597, 602 (4th Cir.1997). This denial can be both actual or constructive, as an indeterminate delay has the same effect as an outright denial. *See Groome Res. Ltd., L.L.C. v. Parish of Jefferson*, 234 F.3d 192, 199 (5th Cir.2000). Thus, ripeness in the FHA context must be distinguished from ripeness in other contexts. Here, because Plaintiffs' requested a change in the existing staircase on May 5, 2011 and Defendants have taken no action to that effect, the Court finds this delay is tantamount to a denial, and Plaintiffs' claim is ripe at this time.

Other courts to consider the issue have concluded the same. In *Reyes v. Fairfield Properties*, 661 F.Supp.2d 249 (E.D.N.Y. 2009), the court held that claims for reconstruction or renovation are not actionable under the reasonable accommodations section of the FHA. 661 F.Supp.2d at 259. In that case, the plaintiff alleged that defendants violated § 3604(f)(3)(B) by failing to replace steps with ramps and widen doors to make her apartment building accessible for her disabled daughter. *Id.* at 258. The court reviewed § 3604(f) and pertinent case law and found no legal authority "suggesting that renovations or reconstruction may constitute an accommodation in rules, policies, practices, or services within the meaning of the FHA[ ] . . . ." *Id.* at 260. Specifically, after parsing the language of the operative subsections of § 3604(f)(3), the court noted

> These subsections, read in conjunction with subsection 3604(f)(B), indicate that modifications of existing premises, which are governed by § 3604(f)(3)(A) if they are paid for by the disabled individual, are generally distinct from accommodation in a rule, policy, practice or service so stated in § 3604(f)(3)(B), which are also generally distinct from design and construction requirements for first occupancy buildings as governed by § 3604(f)(3)(C).

*Id.* at 261. With that, the court held that plaintiff's claim for disability discrimination under § 3604(f)(3)(B) failed as a matter of law.

Similarly, in *Rodriguez v. 551 West 157th St. Owners Corp.*, 992 F.Supp. 385 (S.D.N.Y.1998), the court held that plaintiffs' request to install a ramp to make the entrance of a building wheelchair-accessible was a request for a modification rather than an accommodation. 992 F.Supp. at 387. In so holding, the court reasoned that construction in an existing building "does not . . . qualify as an 'accommodation' of a 'rule, policy, practice or service,'

when the term 'construction' is nowhere to be found and the term 'facility' is excluded." *Id.* The court distinguished a case relied on by Plaintiffs in this case, *Oxford House, Inc. v. Township of Cherry Hill*, 799 F.Supp. 450 (D.N.J.1992), finding that case inapposite to the question of whether the plaintiffs' request for a ramp was an accommodation or modification because the accommodation sought was not for construction but for an adjustment of a zoning ordinance. *Id.* at n. 1. The court dismissed the plaintiffs' FHA claim for failure to provide a reasonable accommodation on these grounds. *See also Thompson v. Westboro Condo. Ass'n*, NO. 05–1893JLR, 2006 WL 2473464, at *4 (W.D.Wash. Aug. 25, 2006) ("The plain language of § 3604(f)(3)(B) excludes construction or improvements as a 'reasonable accommodation.' . . . Failing to construct a ramp is not a failure to accommodate in a rule, policy[,] practice, or service.").

■■■ For these reasons, Plaintiffs' request that Defendants construct an accessible ramp is a request for a modification under § 3604(f)(3)(A). From here, the answer to whether Defendants failed to provide Plaintiffs a reasonable modification is simple: no. The plain language of § 3604(f)(3)(A) makes clear that a reasonable modification may be permitted at Plaintiffs' own expense. Plaintiffs consistently refused to contribute any money toward the development of a ramp in place of a staircase to the beach. Furthermore, to date, Plaintiffs have failed to obtain engineering plans or permits for ramp, despite being told by Defendants that prior approval by the DEP is required. As provided by the Joint Statement of the Department of Housing and Urban Development and the Department of Justice on Reasonable Modifications under the Fair Housing Act (March 2, 2008) (hereinafter, "Joint Statement"):

A housing provider may require that a request for a reasonable modification include a description of the proposed modification both before changes are made to the dwelling and before granting the modification.... A housing provider may also require that the tenant obtain any building permits needed to make the modification ....

(Joint Statement 21). Plaintiffs' obstinate refusal to participate with Defendants and to obtain the proper plans, permitting, and payment for the construction of a ramp renders the Court's conclusion as to this claim an easy one: Defendants are entitled to summary judgment and Plaintiffs' claim against Defendants for a failure to construct an accessible ramp fails as a matter of law.

## C. Defendants' Failure to Maintain the Beach Dune to Provide an Accessible Path

 Plaintiffs' third and final claim rests on Defendants' alleged failure to excavate or maintain the dune to preserve an accessible path for Plaintiffs' and their son to the beach. Again, the Court must decide whether this is more appropriately a request for an accommodation or modification under § 3604(f)(3).

The Court finds that Plaintiffs' request for maintenance or excavation of the beach dune is a request for a modification. As discussed above, in its most basic sense, Plaintiffs' request is not one for the alteration of a policy or service but rather for a repair or change of the existing premises. Thus, Plaintiffs' claim is best analyzed under § 3604(f)(3)(A).

Once decided that Plaintiffs' request is one for a modification, the conclusion that

Plaintiffs' claim fails as a matter of law is clear: Despite Defendants consistent urging, Plaintiffs failed to submit *any* plans or secure approval from the DEP for *any* changes to the existing beachfront.[3] Defendants are prohibited from modifying the existing beach dune without authorization from the DEP and related municipal authorities; Defendants informed Plaintiffs of this fact and Plaintiffs failed to take any action toward the modification of the beach dune as required under § 3604(f)(3)(A).

 Moreover, even if Plaintiffs' request for the excavation or maintenance of the beach dune could be considered an accommodation, there is no evidence Plaintiffs ever made such a request. In short, as an initial matter, it is not clear whether Plaintiffs' claim is ripe. "To show ripeness, a plaintiff must show that under the circumstances it has afforded the [defendant] a reasonable opportunity to consider the proposed accommodation." *Caron Found. of Fla., Inc. v. City of Delray Beach,* 879 F.Supp.2d 1353, 1364–65 (S.D.Fla.2012). "Simply put, a plaintiff must actually request an accommodation and be refused in order to bring a reasonable accommodation claim under the FHA." *Schwarz,* 544 F.3d at 1219.

 After a review of the parties' presuit correspondence, it is not apparent that Plaintiffs specifically requested Defendants to maintain an accessible path to the beach over the beach dune. Rather, as discussed above, Plaintiffs requested that the Association modify the staircase or create an alternate path (with or without a mat system) at the northern end of the Association property. While such a request for maintenance of a beach dune

---

**3.** Plaintiffs did submit proposed plans for a ramp structure to the DEP nine months after filing this action. In response, the DEP recommended that Plaintiffs proceed with a proposed alternative but made clear that its rec-

ommendation was preliminary and obtaining permitting and final approval was required. To date, Plaintiffs have not obtained final authorization from the DEP for any of its proposed modifications.

path may be implied, this request seems to make its first express appearance in Plaintiffs' complaint. Without ever clearly requesting Defendants to excavate an accessible path over the beach dune, Defendants cannot be liable. *See id.* (holding that a defendant cannot be liable for refusing to grant an accommodation it did not know was necessary). Therefore, viewed as a request for an accommodation, Plaintiffs' claim may be dismissed for this reason.

 Furthermore, as discussed above, Plaintiffs are not entitled to the accommodation (or modification) of their choosing. An accommodation is not reasonable if it imposes on Defendants undue financial or administrative burdens. *See id.* at 1220; *Groner v. Golden Gate Gardens Apts.*, 250 F.3d 1039, 1047 (6th Cir. 2001) (a reasonable accommodation does not impose an obligation to do everything humanly possible to accommodate a disabled person). Here, Defendants are not permitted to excavate or alter the beach absent prior approval of the DEP. Certainly, if excavation of the beach is infeasible, then it is also unreasonable. While Plaintiffs introduce cases in an attempt to demonstrate to the Court a housing provider's maintenance responsibilities, *see e.g., Davis v. Lane Mgmt.*, 524 F.Supp.2d 1375 (S.D.Fla.2007) (failing to maintain an elevator as a denial of a reasonable accommodation), these cases are inapposite because they involve maintenance of an artificially constructed element under the exclusive control and jurisdiction of the housing provider. Here, Defendants are requested to maintain a critically eroded beach dune under the control and jurisdiction of the DEP.

This point is highlighted by the recent impact of Tropical Storm Sandy on the beach dune. Whereas the staircase to the beach was partially covered with sand by the municipality in 2006 and aluminum stairs were installed to traverse the eroded beach escarpment in 2010, the recent storm leveled the stairs and removed the sand from the staircase, leaving Defendants awaiting a determination by the DEP and municipality of what action will be taken in regards to the beach dune. Any putative approval of excavation of the beach dune will likely be delayed until after this time.

In short, a request by Plaintiffs for excavation of an accessible path over the beach dune, while a request for a modification, likewise fails as a request for an accommodation. Defendants are entitled to summary judgment as to this claim.

### D. Defendants' Request for Sanctions

The Court declines to impose sanctions against Plaintiffs under its inherent authority at this time. While Plaintiffs' pre-suit conduct was less than urbane, Plaintiffs reap the seeds they sowed for their own obstinacy. The Court does not find that Plaintiffs' claims were brought in bad faith or are patently frivolous. *See Barnes v. Dalton*, 158 F.3d 1212, 1214 (11th Cir. 1998) (holding that a finding of bad faith is the key to unlocking the Court's inherent power). Therefore, Defendants' request for sanctions is denied.

### IV. Conclusion [4]

In conclusion, the Court finds that Defendants are entitled to summary judg-

---

4. Plaintiffs filed a motion to strike or for discovery under Rule 56(d) **[DE 58]**. Plaintiffs contend that Defendants introduced new arguments and documents that were not produced in response to Plaintiffs' request for production. Specifically, Plaintiffs claim that Defendants assertion that modifying the dune would subject them to criminal and civil penalties was not supported by record evidence and Defendants introduction of Russell's employment agreement with Oasis Outsourcing, Inc. requires further discovery to determine the scope of Russell's employment duties.

ment as to all claims. For the foregoing reasons, it is hereby

**ORDERED AND ADJUDGED** that Defendants' motion to dismiss converted into a motion for summary judgment [**DE 29**] is **GRANTED.** Final judgment will be set by separate order. The Clerk of Court is directed to **CLOSE** this case and **DENY** any pending motions as moot.

The Court did not rely on this information in its ruling, and therefore, Plaintiffs' motion [**DE 58**] is **DENIED.**