[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 17-15552
Non-Argument Calendar

_____

D.C. Docket No. 4:15-cv-10167-JEM

KEITH COHEN,
CHERI COHEN,

                                    Plaintiffs-Counter Defendants-Appellants,

versus

MONROE COUNTY,
a political subdivision of the State of Florida,

                                    Defendant-Counter Claimant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(September 20, 2018)

Before MARCUS, WILLIAM PRYOR, and FAY, Circuit Judges.

PER CURIAM:

Appellants Keith and Cheri Cohen (collectively, "the Cohens") appeal the

district court's grant of summary judgment in favor of Appellee Monroe County in

a civil action in which the Cohens raised claims under the federal and Florida Fair Housing Acts, 42 U.S.C. § 3604(f)(3)(B) ("FHA") and Fla. Stat. § 760.23(9)(b), and Monroe County counterclaimed, alleging the Cohens' violation of a restrictive covenant. The Cohens claimed that Monroe County failed to accommodate their disabilities, which rendered them unable to work, when the county denied their request for a waiver of a deed restriction that limited the Cohens' desired home to buyers and occupants who derive 70% of their income from gainful employment in the county. While this action was pending, the Cohens bought the home.

The district court held that Monroe County did not violate the FHA or the Florida Fair Housing Act because the requested accommodation was not reasonable or necessary to afford the Cohens equal opportunity to use and enjoy a dwelling. The court also concluded that the Cohens violated the restrictive covenant on their purchased property and ordered them to sell the home to a buyer who met the covenant's requirements. On appeal, the Cohens argue that: (1) the district court erred in determining that their requested accommodation was unreasonable and unnecessary; and (2) the district court's grant of equitable relief in favor of Monroe County should be reversed. After careful review, we affirm.

"We review a district court's grant of summary judgment <u>de novo</u>, viewing the record and drawing all factual inferences in a light most favorable to the nonmoving party." <u>Bhogaita v. Altamonte Heights Condo. Ass'n, Inc.</u>, 765 F.3d

2

1277, 1284–85 (11th Cir. 2014) (quotation omitted).  A court must grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  We review the district court's decision to grant equitable relief for abuse of discretion, underlying questions of law de novo, and findings of fact upon which the decision to grant equitable relief was made for clear error.  Weatherly v. Ala. State Univ., 728 F.3d 1263, 1269 (11th Cir. 2013).

First, we are unpersuaded by the Cohens' claim that the district court erred in determining that their requested accommodation was unreasonable for purposes of the FHA.  The FHA prohibits discriminating against a person on the basis of a "handicap," or a disability, by refusing to make reasonable accommodations when necessary to afford the person equal opportunity to use and enjoy a dwelling.  Fair Housing Amendments Act of 1988, Pub.L. No. 100–430, § 6, 102 Stat. 1619 (codified at 42 U.S.C. § 3604(f)(3)(B)).  The FHA and the Florida Fair Housing Act are substantively identical, so the same legal analysis applies to each.  Loren v. Sasser, 309 F.3d 1296, 1299 n.9 (11th Cir. 2002).

A successful failure-to-accommodate claim has four elements. To prevail, one must prove that (1) he is disabled within the meaning of the FHA, (2) he requested a reasonable accommodation, (3) the requested accommodation was necessary to afford him an opportunity to use and enjoy his dwelling, and (4) the

3

defendants refused to make the accommodation.  Schwarz v. City of Treasure Island, 544 F.3d 1201, 1218–19 (11th Cir. 2008).  The burden of proof is on the plaintiff.  Loren, 309 F.3d at 1302.  The parties do not dispute that the Cohens are disabled or that Monroe County denied their requested accommodation.

At issue here is whether the Cohens have shown that their proposed accommodation is reasonable.  "Whether a requested accommodation is required by law is highly fact-specific, requiring case-by-case determination."  Id. (quotation omitted).  An accommodation is not reasonable if it imposes undue financial and administrative burdens on the defendant or "requires a fundamental alteration in the nature of the program."  See Schwarz, 544 F.3d at 1220 (quotation omitted); see also Sch. Bd. of Nassau Cty., Fla. v. Arline, 480 U.S. 273, 287 n.17 (1987).  "[A] proposed accommodation amounts to a fundamental alteration if it would eliminate an essential aspect of the relevant activity."  Schwarz, 544 F.3d at 1220 (quotations and citations omitted).

Under Florida law, the Florida Keys are an "area of critical state concern," and have been directed to "[e]stablish a land use management system that protects the natural environment of the Florida Keys[,] . . . conserves and promotes the community character of the Florida Keys[, and] . . . promotes orderly and balanced growth in accordance with the capacity of available and planned public facilities and services."  Fla. Stat. § 380.0552(2)(a)-(c) (2015).  The statutory framework

also directs that "affordable housing" be provided "in close proximity to places of employment in the Florida Keys." Id. § 380.0552(2)(d). Monroe County enacted § 130-161 of its Land Development Code, which creates development incentives and bonuses for developers who record deed restrictions that limit the purchase and occupancy of certain residential units to individuals who meet specific local income requirements. In particular, the Monroe County Land Development Code ("MCLDC"): (1) provides incentives to owners who restrict the use of an affordable housing dwelling unit designed for employee housing to households that derive at least 70 percent of their household income from gainful employment in the county, MCLDC § 130-161(a)(6)(b); and (2) allows up to 20 percent of an affordable or employee housing project with five dwelling units or more to be developed as market-rate housing dwelling units, but the use of any market-rate housing dwelling unit must be restricted for a period of at least 30 years to households that derive at least 70 percent of their household income from gainful employment in the county, id. §130-161(a)(8)(a).

In this case, the Cohens seek to avoid the local-income restrictive covenant -- as provided by the MCLDC -- arguing that the County failed to grant them a reasonable accommodation under the FHA and Florida Fair Housing Act through a waiver of the requirement that purchasers and occupants of the subject property derive at least 70 percent of their household income from gainful employment in

5

the County.  Notably, the Cohens' property is not part of the lower-priced housing units in their housing development; rather, it is one of the market-rate deed-restricted dwellings.[1]  We are unpersuaded.

As the summary judgment record reveals, there is no genuine dispute of fact that the Cohens' requested accommodation is not reasonable and would require a fundamental alteration in the nature of Monroe County's local-income program. As for the purpose of the local-income requirements imposed on market-rate deed-restricted homes, the County provided a declaration from a County employee stating that granting the Cohens' requested accommodation would "defeat the purpose of the County's affordable and employee housing plan and would be contrary to" the express terms of the Florida statute mandating affordable housing in close proximity to places of employment in the Florida Keys.  This makes sense. The deed-restricted market-rate properties are created and defined within the section of the County's Land Development Code entitled, "Affordable and employee housing."  See MCLDC § 130-161 (2015) (emphasis added).  The deed-restricted market-rate properties share an in-county income requirement identical to the lower-priced housing, and the only significant difference between market-

---

[1]    The deed restriction on the Cohens' property reads:

Each market rate dwelling unit developed on the Market Rate Property is hereby deed restricted for a period of thirty (30) years to the use and occupancy, whether by ownership or rental, by households that derive at least seventy percent (70%) of their household income from gainful employment in Monroe County.

6

rate deed-restricted houses and the lower-priced housing is that the former's price and occupancy is not constrained based on adjusted gross income. Compare MCLDC § 130-161(6) (restricting use "to households that derive at least 70 percent of their household income from gainful employment in the county"), with MCLDC § 130-161(8) (restricting use "to households that derive at least 70 percent of their household income from gainful employment in the county").

In other words, the market-rate deed restrictions share the same purpose as the lower-priced housing restrictions, but for employees who do not qualify for affordable and employee housing based on the adjusted gross income limitations -- to ensure a stock of housing in close proximity to places of employment in the Florida Keys. See Fla. Stat. § 380.0552(d). By designating certain housing for employees, regardless of income level, the County's restrictions necessarily make housing more affordable for all Keys' employees, consistent with the Florida statute. If the County were to waive its local-income restrictions on the market-rate housing, then even less housing would be available for employees in the Florida Keys, and the available housing would be even less affordable. Because this kind of waiver "would eliminate an essential aspect of the relevant activity" -- keeping housing rates down for all employees of the Florida Keys -- we conclude that the accommodation sought by the Cohens would amount to a fundamental alteration of the program. Schwarz, 544 F.3d at 1220 (quotation omitted). Indeed,

7

the Cohens have not argued in their brief that the County regularly allows waivers for non-employees to live within the local-income communities.  See id. at 1222-25.  Thus, the district court did not err in concluding that, as a matter of law on this summary judgment record, the Cohens did not show that their requested accommodation was reasonable, and we affirm the district court's entry of summary judgment.

We also find no merit to the Cohen's claim that the district court abused its discretion in granting equitable relief in favor of Monroe County.  Generally, to obtain injunctive relief in Florida a party must demonstrate: (1) a clear legal right, (2) the inadequacy of a remedy at law, and (3) that irreparable injury will occur if such relief is not granted.  Lee Cty., Fla. v. Fort Myers Airways, Inc., 688 So. 2d 389, 390 (Fla. Dist. Ct. App. 1997).  However, "[r]estrictive covenants have traditionally enjoyed the strong protection afforded property interests by specific remedies designed to secure enjoyment of the intended [benefit] rather than compensation designed to substitute for its loss." Autozone Stores, Inc. v. Ne. Plaza Venture, LLC, 934 So. 2d 670, 673 (Fla. Dist. Ct. App. 2006) (quotation omitted).  Thus, "[i]njunctive relief is normally available to redress violations of . . . restrictive covenants [affecting real property] without proof of irreparable injury or a showing that a judgment for damages would be inadequate."  Id.; Fox v.

8

Madsen, 12 So. 3d 1261, 1263 (Fla. Dist. Ct. App. 2009) ("a mandatory injunction is the proper means of enforcing a restrictive agreement affecting real estate").

Moreover, the decision whether to grant equitable relief, and, if granted, what form it shall take, lies in the discretion of the district court. Castle v. Sangamo Weston, Inc., 837 F.2d 1550, 1563 (11th Cir. 1988); see also Black Warrior Riverkeeper, Inc. v. U.S. Army Corps of Eng'rs, 781 F.3d 1271, 1290 (11th Cir. 2015) ("the federal courts possess broad discretion to fashion an equitable remedy").

As we've noted, the deed restriction on the Cohens' property provides that: "Each market rate dwelling unit developed on the Market Rate Property is hereby deed restricted for a period of thirty (30) years to the use and occupancy, whether by ownership or rental, by households that derive at least seventy percent (70%) of their household income from gainful employment in Monroe County." While "[r]estrictive covenants are strictly construed against those who assert the power to limit the homeowner's free use of the land," Leamer v. White, 156 So. 3d 567, 572 (Fla. Dist. Ct. App. 2015) (quotation omitted), the language here is clear: the covenant prevents any use or occupation of a property, by ownership or rental, by households who do not derive at least 70% of their income from employment in Monroe County. Thus, there is no basis for the Cohens' argument that they should be allowed to remain owners of the property and should not be compelled to sell to

9

a qualified purchaser. Because the covenant restricts ownership <u>or</u> rental to Monroe County employees, the Cohens are not allowed to remain as owners while they rent the property to Monroe County employees. Indeed, allowing non-employees like the Cohens to rent property to employees could undermine the availability and affordability of housing for Monroe County employees -- the very purpose of the local-income requirement.

Further, as the district court observed, the Cohens purchased the subject property knowing that they neither met the income requirement of the property's restrictive covenant nor had a waiver from the County. Potentially, any purchaser could feel justified in violating the restrictive covenants and buying market rate deed-restricted properties when they do not otherwise meet the income requirements. Thus, their continued ownership of the property purchase of the property could fundamentally alter the market-rate deed-restricted housing program on a grand scale. On this record, we cannot say the district court abused its discretion in enforcing the restrictive covenant in favor of Monroe County and ordering the Cohens to sell the home to a buyer who met the covenant's requirements.

**AFFIRMED**.